STATE of Wisconsin, Plaintiff-Respondent,

v.

Darryl J. HALL, Defendant-Appellant-Petitioner.

Supreme Court

*No. 94–2848–CR. Oral argument September 24, 1996.—Decided January 24, 1997.*

(Also reported in 557 N.W.2d 778.)

WILCOX, J., dissents.
STEINMETZ and CROOKS, J.J., join.

For the defendant-appellant-petitioner there were briefs by *Jerome F. Buting, Pamela S. Moorshead* and *Buting & Williams, S.C.,* Brookfield and *Robert R. Henak* and *Shellow, Shellow & Glynn, S.C.,* Milwaukee

and oral argument by *Jerome F. Buting & Robert R. Henak.*

For the plaintiff-respondent the cause was argued by *Gregory M. Posner-Weber,* assistant attorney general, with whom on the brief was *James E. Doyle.*

Amicus curiae brief was filed by *Michael J. Fitzgerald* and *Coffey, Coffey & Geraghty,* Milwaukee for the American Civil Liberties Union of Wisconsin Foundation and Wisconsin Association of Criminal Defense Lawyers.

¶ 1. WILLIAM A. BABLITCH, J. Darryl J. Hall challenges the constitutionality of the drug tax stamp law ("the stamp law"), cited in full below.[1] Hall was

---

[1] Tax on Controlled Substances.

**139.87 Definitions.** In this subchapter:

(2) "Dealer" means a person who in violation of ch. 161 possesses, manufactures, produces, ships, transports, delivers, imports, sells or transfers to another person more than 42.5 grams of marijuana, more than 5 marijuana plants, more than 14 grams of mushrooms containing psilocin or psilocybin, more than 100 milligrams of any material containing lysergic acid diethylamide or more than 7 grams of any other schedule I controlled substance or schedule II controlled substance. "Dealer" does not include a person who lawfully possesses marijuana or another controlled substance.

(3) "Department" means the department of revenue.

(4) "Marijuana" has the meaning under s. 161.01(14).

(5) "Schedule I controlled substance" means a substance listed in s. 161.14.

(6) "Schedule II controlled substance" means a substance listed in s. 161.16.

**139.88 Imposition.** There is imposed on dealers, upon acquisition or possession by them in this state, an occupational tax at the following rates:

(1) Per gram or part of a gram of marijuana, whether pure or impure, measured when in the dealer's possession, $3.50.

convicted and sentenced to two consecutive three-year sentences under the stamp law, and, concurrently, two

(1d) Per marijuana plant, regardless of weight, counted when in the dealer's possession, $1000.

(1g) Per gram or part of a gram of mushrooms or parts of mushrooms containing psilocin or psilocybin, whether pure or impure, measured when in the dealer's possession, $10.

(1r) Per 100 milligrams or part of 100 milligrams of any material containing lysergic acid diethylamide, whether pure or impure, measured when in the dealer's possession, $100.

(2) Per gram or part of a gram of other schedule I controlled substances or schedule II controlled substances, whether pure or impure, measured when in the dealer's possession, $200.

**139.89 Proof of payment.** The department shall create a uniform system of providing, affixing and displaying stamps, labels or other evidence that the tax under § 139.88 has been paid. Stamps or other evidence of payment shall be sold at face value. No dealer may possess any schedule I controlled substance or schedule II controlled substance unless the tax under § 139,88 has been paid on it, as evidenced by a stamp or other official evidence issued by the DOR. The tax under this subchapter is due and payable immediately upon acquisition or possessing of the schedule I controlled substance or schedule II controlled substance in this state, and the department that time has a lien on all of the taxpayer's property. Late payments are subject to interest at the rate of 1% per month or part of a month. No person may transfer to another person a stamp or other evidence of payment.

**139.90 No immunity.** Acquisition of stamps or other evidence that the tax under s. 139.88 has been paid does not create immunity for a dealer from criminal prosecution.

**139.91 Confidentiality.** The department may not reveal facts obtained in administering this subchapter, except that the department may publish statistics that do not reveal the identities of dealers. Dealers may not be required to provide any identifying information in connection with the purchase of stamps. No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of schedule I controlled substances or schedule II controlled substances on which the tax has not been paid or in connection with taxes due under s. 139.88 from the dealer.

**139.92 Examination of records.** For the purposes of determining the amount of tax that should have been paid, determining whether or not the dealer should have paid taxes or collecting any taxes under s. 139.88, the department may examine, or cause to be examined, any books, papers, records or memoranda that may be relevant to making those determinations, whether the books, papers, records or memoranda are the property of or in the possession of the dealer or another person. The department may require the attendance of any person having knowledge or information that may be relevant, compel the production of books, papers, records or memoranda by persons required to attend, take testimony on matters material to the determination, issue subpoenas and administer oaths or affirmation.

**139.93 Appeals, presumption, administration. (1)** The taxes, penalties and interest under this subchapter shall be assessed, collected and reviewed as are income taxes under ch. 71.

(2) If the department finds that the collection of the tax under this subchapter is jeopardized by delay, the department may issue, in person or by registered mail to the last-known address of the taxpayer, a notice of its intent to proceed under this subsection, may make a demand for immediate payment of the taxes, penalties and interest due and may proceed by the methods under s. 71.91(5) and (6). If the taxes, penalties and interest are not immediately paid, the department may seize any of the taxpayer's assets. Immediate seizure of assets does not nullify the taxpayer's right to a hearing on the department's determination that the collection of the assessment will be jeopardized by delay, nor does it nullify the taxpayer's right to post a bond. Within 5 days after giving notice of its intent to proceed under this subsection, the department shall, by mail or in person, provide the taxpayer in writing with its reasons for proceeding under this subsection. The warrant of the department shall not issue and the department may not take other action to collect if the taxpayer within 10 days after the notice of intent to proceed under this subsection is given furnishes a bond in the amount, not exceeding double the amount of the tax, and with such sureties as the department of revenue approves, conditioned upon the payment of so much of the taxes as shall finally be determined to be due, together with interest thereon. Within 20 days after notice of intent to proceed under this subsection is given by the department of revenue, the person against whom the depart-

30-year sentences, are not before us. The stamp law requires dealers to purchase tax stamps for illegal drugs in their possession and affix the stamps to the

ment intends to proceed under this subsection may appeal to the department the department's determination that the collection of the assessment will be jeopardized by delay. Any statement that the department files may be admitted into evidence and is prima facie evidence of the facts it contains. Taxpayers may appeal adverse determinations by the department to the circuit court for Dane County.

(3) The taxes and penalties assessed by the department are presumed to be valid and correct. The burden is on the taxpayer to show their invalidity or incorrectness.

(4) The department may request the department of administration to. sell, by the methods under s. 125.14(2)(f), all assets seized under sub. (2).

(5) No court may issue an injunction to prevent or delay the levying, assessment or collection of taxes or penalties under this subchapter.

(6) The department shall enforce, and the duly authorized employes of the department have all necessary police powers to prevent violations of, this subchapter.

**139.94 Refunds.** If the department is determined to have collected more taxes than are owed, the department shall refund the excess and interest at the rate of 0.75% per month or part of a month when that determination is final. If the department has sold property to obtain taxes, penalties and interest assessed under this subchapter and those taxes, penalties and interest are found not to be due, the department shall give the former owner the proceeds of the sale when that determination is final.

**139.95 Penalties. (1)** Any dealer who possesses a schedule I controlled substance or schedule II controlled substance that does not bear evidence that the tax under s. 139.88 has been paid shall pay, in addition to the tax under s. 139.88, a penalty equal to the tax due. The department shall collect penalties under this subchapter in the same manner as it collects the tax under this subchapter.

(2) A dealer who possesses a schedule I controlled substance or schedule II controlled substance that does not bear evidence that the tax under s. 139.88 has been paid may be fined not more than $10,000 or imprisoned for not more than 5 years or both.

64

drugs. Hall argues that the stamp law is unconstitutional because it violates his privilege against self-incrimination under both the federal and the Wisconsin constitutions. The State of Wisconsin (State) argues that the stamp law provides protection that is coextensive with the privilege against self-incrimination and therefore is constitutional. We conclude that because the stamp law fails to protect against the derivative use, in a criminal proceeding, of information it compels, it violates the privilege against self-incrimination and is therefore unconstitutional. Although identifying and prosecuting drug dealers is a laudable purpose which this court whole-heartedly applauds, the legislature failed to use constitutional means to achieve this purpose. We therefore reluctantly strike down the drug tax stamp law as unconstitutional. Accordingly, we reverse.

¶ 2. The facts are undisputed. The State enacted a law requiring "dealers" to purchase tax stamps for the drugs in their possession and to affix the stamps to

(3) Any person who falsely or fraudulently makes, alters or counterfeits any stamp or procures or causes the same to be done or who knowingly utters, publishes, passes or tenders as true any false, altered or counterfeit stamp or who affixes a counterfeit stamp to a schedule I controlled substance or schedule II controlled substance or who possesses a schedule I controlled substance or schedule II controlled substance to which a false, altered or counterfeit stamp is affixed may be fined not more than $10,000 or imprisoned for not less than one year nor more than 10 years or both.

**139.96 Use of revenue.** If taxes, penalties and interest are collected under this subchapter as a result of an arrest, the department of revenue shall pay the taxes, penalties and interest to the state or local law enforcement agency that made the arrest associated with the revenue.

Wis. Stat. ch. 139, subch. IV (1991–92) (all further references are to the 1991–92 Statutes unless otherwise noted.

their illegal drugs. The statute defines "dealer," as "a person who in violation of ch. 161 possesses, manufactures, produces, ships, transports, delivers, imports, sells or transfers to another person more than. . .7 grams of any other schedule I controlled substance or schedule II controlled substance." Wis. Stat. § 139.87(2). The drug tax is paid by purchasing stamps issued by the Department of Revenue (DOR). Wis. Stat. § 139.89. Drug tax stamps must be affixed to the drugs for which the tax has been paid. § 139.89. Failure to pay the required tax subjects the violator to incarceration for a term not to exceed five years, a fine of not more than $10,000, or both. § 139.95.

¶ 3. Hall was arrested, charged, and convicted of two counts of delivering cocaine base, contrary to Wis. Stats. §§ 161.41(1)(cm)4, 161.48, and 161.49, and two counts of failing to comply with the drug tax stamp law, contrary to Wis. Stat. ch. 139, subch. IV. On December 3, 1993, in the circuit court of Dane County, Judge Richard J. Callaway sentenced Hall to two consecutive three-year sentences for the stamp law convictions and, concurrently, two consecutive 30-year sentences for the delivery convictions.

¶ 4. Affirming Hall's stamp law convictions, the court of appeals concluded that the statute would be unconstitutional if the State could use information it compelled either directly or derivatively against the dealer in a criminal proceeding and, on its face, the statute failed to protect against derivative use of compelled information. *State v. Hall*, 196 Wis. 2d 850, 867–68, 540 N.W.2d 219 (1995). However, the court of appeals applied a "saving construction" to the statute, interpreting the confidentiality provision to prohibit both direct and derivative use of compelled information

and consequently providing Hall with protection coextensive to the privilege against self-incrimination.

██

¶ 5. Both the United States and Wisconsin Constitutions protect persons from state compelled self-incrimination. Whether or not a statute violates these constitutional provisions presents a question of law that we review de novo. *State v. McManus*, 152 Wis. 2d 113, 129, 447 N.W.2d 654 (1989).

¶ 6. This case presents three issues: (1) whether Wis. Stat. § 139.89 of the stamp law unconstitutionally compels self-incrimination; and if so, (2) whether Wis. Stat. § 139.91, the confidentiality provision of the stamp law, on its face, provides Hall with protection as broad as the protection offered by the privilege against self-incrimination; and if not, (3) whether the confidentiality provision may be construed in a manner which provides protection coextensive with the privilege.[2] We conclude that the stamp law unconstitutionally compels self-incrimination, the confidentiality provision of the stamp law fails to provide protection coextensive with the privilege, and the stamp law cannot be construed to provide constitutional protection.

I.

██

¶ 7. First, we consider whether Wis. Stat. § 139.89 of the stamp law unconstitutionally compels Hall to incriminate himself. The right against self-

---

[2] Hall also challenges the stamp law on double jeopardy grounds. Because we hold the stamp law unconstitutional on self-incrimination grounds, we need not address the double jeopardy issue.

incrimination is a fundamental right guaranteed by both the United States and the Wisconsin Constitutions. *In re Grant*, 83 Wis. 2d 77, 80, 264 N.W.2d 587 (1978). Under the Fifth Amendment's self-incrimination clause, "[n]o person. . .shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const., amend. V. Our state constitution provides that "[n]o person. . .may be compelled in any criminal case to be a witness against himself or herself." Wis. Const. art. I, § 8(1). Although much of the analysis of this opinion is derived from United States Supreme Court decisions construing the Fifth Amendment privilege, the same analysis applies in determining the protection afforded by Hall's state privilege. *State v. Schultz*, 152 Wis. 2d 408, 416, 448 N.W.2d 424 (1989); *State v. Sorenson*, 143 Wis. 2d 226, 259–60, 421 N.W.2d 77 (1988).

¶ 8.　The privilege against self-incrimination may be invoked whenever a person has a real and appreciable apprehension that information compelled by the state could be used against him or her in a criminal proceeding. *Grant*, 83 Wis. 2d at 81. The privilege extends not only to the direct use of information which would support a conviction, but also to derivative use of such evidence, i.e., using compelled information to furnish a link in the chain of evidence necessary for prosecution. *Id*. Darryl Hall contends that his compliance with the tax law would have provided the State with information that he reasonably supposed could have been used against him in a prosecution for violation of any one of several crimes contained in Wis. Stat. ch. 161, Wisconsin's Uniform Controlled Substances Act. We agree.

68

¶ 9. The United States Supreme Court has carefully considered the impact of tax laws on Fifth Amendment guarantees against self-incrimination. *Leary v. United States*, 395 U.S. 6 (1969); *Marchetti v. United States*, 390 U.S. 39 (1968); *Grosso v. United States*, 390 U.S. 62 (1968). In *Marchetti*, the defendant was convicted of violating federal wagering statutes which required persons engaged in professional gambling to pay an occupational tax and to register with the Internal Revenue Service. Marchetti complained that these statutory obligations violated his Fifth Amendment right against self-incrimination because they significantly enhanced the likelihood that those who complied with the provisions would be successfully prosecuted for violating state and federal anti-gambling laws. The Court agreed, identifying the following criteria for determining the constitutionality of a tax statute challenged on Fifth Amendment grounds: (1) whether the regulated activity is in an area "permeated with criminal statutes," and the tax aimed at individuals "inherently suspect of criminal activities;" (2) whether an individual is required, under pain of criminal prosecution, to provide information which a person might reasonably suppose would be available to prosecuting authorities; and (3) whether such information would provide a significant link in a chain of evidence tending to establish guilt. *Sisson v. Triplett*, 428 N.W.2d 565, 571 (Minn. 1988) (explaining *Marchetti*). These criteria form the three prongs of the *Marchetti* test. If all three are met, the tax statute violates the privilege against self-incrimination.

¶ 10. The fear of self-incrimination must be real and appreciable, not merely an imaginary possibility of

danger. *In re Grant*, 83 Wis. 2d at 82. The danger should be appraised with reference to the ordinary operation of law in the ordinary course of things, not danger of an imaginary or insubstantial character. *Id.* This court has liberally construed the privilege in favor of the right which it was intended to protect. *Id.* We analyze the stamp law in light of these principles, and apply the three-prong *Marchetti* test.

¶ 11. Hall contends that two requirements of the stamp law violate his privilege against self-incrimination: (1) the purchase requirement; and (2) the requirement that tax stamps must be affixed to a dealer's drugs. He argues that these requirements violate his privilege in two ways: (1) by requiring a dealer, when purchasing stamps, to provide incriminating information that may be used by prosecutors against him in a criminal proceeding; and (2) by providing vital evidence in a prosecutor's case against a dealer who complies with the statute and affixes the stamps to illicit drugs because such acts show: (a) knowledge that the items are controlled substances, and (b) intent to possess controlled substances.

¶ 12. Our analysis begins with the first prong of *Marchetti* - whether the regulated activity is in an area " 'permeated with criminal statutes,' " and the tax aimed at individuals " 'inherently suspect of criminal activities.' " *Marchetti*, 390 U.S. at 47 (citation omitted). Few would disagree that the stamp law meets this criterion. State and federal law are permeated with criminal statutes addressing the issue of controlled substances. *See, e.g.*, Wis. Stat. ch. 161; 21 U.S.C. §§ 801, et seq. Moreover, the tax is imposed only upon "dealers" which, by its definition, includes only those persons who possess drugs in violation of ch. 161. Persons lawfully in possession of controlled substances are

70

specifically exempted from the tax provisions. Wis. Stat. § 139.87(2). Legally held controlled substances are not subject to taxation. Wis. Stat. § 139.88. Without question, the stamp law is directed toward a select group inherently suspect of criminal activities.

¶ 13. We turn to the second prong of *Marchetti*: whether the dealer might reasonably suppose that information provided by either the purchase, or affix and display requirements requires a person, under pain of criminal prosecution, to provide information which the individual might reasonably suppose would be available to prosecuting authorities. Here, we analyze separately the purchase, and the affix and display requirements of the stamp law.

¶ 14. First, we examine the purchase requirement. In *State v. Heredia*, 172 Wis. 2d 479, 493 N.W.2d 404 (Ct. App. 1992), *cert. denied*, 113 S.Ct. 2386 (1993), the court of appeals distinguished *Marchetti* and held that the payment provision of Wisconsin's drug tax stamp statute, on its face, does not violate a defendant's constitutional privilege against compelled self-incrimination. The *Heredia* court concluded that, unlike the wagering tax in *Marchetti*, the stamp law "both contemplates and permits the anonymous payment of the tax . . ." and, therefore, does not subject those who comply with its provisions to compelled self-incrimination. *Heredia*, 172 Wis. 2d at 485. In so concluding, the court of appeals relied on the stamp law's confidentiality provision, Wis. Stat. § 139.91, which provides that "[d]ealers may not be required to provide any identifying information in connection with the purchase of stamps." We agree with the Heredia court's conclusion that the stamp purchase requirement is

71

constitutional. However, we arrive at our conclusion for different reasons.

¶ 15. The incriminating nature of the compelled information under the purchase requirement is evident. The requirement that dealers purchase tax stamps compels them to incriminate themselves by telling the government that they are drug dealers. Requesting tax stamps in the amount required of a dealer is, in and of itself, an admission that one possesses drugs illegally or intends to do so. In this case, the statute required Hall to purchase more than $20,000 in tax stamps. Contrary to the State's contention that not all tax stamp purchasers are dealers, it defies common sense to suppose that a person buying more than $20,000 worth of tax stamps does not possess or contemplate possession of illegal drugs. Consequently, a tax stamp purchase expresses the dealer's involvement with at least the quantity of controlled substances commensurate with the number of stamps purchased.

¶ 16. The fact that a dealer purchases drug tax stamps also indicates his or her knowledge of the nature of the substance possessed and of the fact of possession. Under our controlled substances statutes, proof that the defendant knew or believed that the substance was a controlled substance is an element of the crime that must be proved by the state. *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). Thus, compliance with the stamp law's purchase requirement involves the incriminating admission of crucial elements of the crime of possession of controlled substances.

¶ 17. It is, of course, irrelevant that the purchaser might never give this information verbally. Actions speak as loud as words under the Fifth Amend-

ment. *Doe v. United States*, 487 U.S. 201, 210 (1988). In *Fisher v. United States*, 425 U.S. 391, 410 (1976), the Court acknowledged that the act of producing physical evidence in response to a subpoena has communicative aspects of its own because compliance with the subpoena tacitly concedes that the taxpayer believes that the papers are those described in the subpoena. The act of purchasing tax stamps similarly discloses the taxpayer's knowledge and intent. The incriminating communication is compelled because the statute mandates that a dealer purchase the stamps upon pain of criminal punishment. Wis. Stat. § 139.95(2).

¶ 18. Next, we consider whether the purchase requirement creates a substantial danger that the information will be available for criminal prosecution. Under the stamp law, a tax is imposed on drug dealers that must be paid immediately upon acquisition or possession of a controlled substance. Wis. Stat. § 139.89. Failure to pay the tax exposes the dealer to a five year prison term, a fine, or both. Wis. Stat. § 139.95(2). The DOR has established two methods of purchasing the stamps. Dealers must either purchase the stamps in person at a DOR location, or dealers may purchase the stamps by mail. Under the mail order option, dealers must supply the DOR with a name and address. The stamps are not transferable. § 139.89. The determinative question is whether the DOR provides a method of purchasing stamps that does not compel dealers to provide information available against them in a criminal proceeding, thereby allowing the stamp law to pass constitutional muster.

¶ 19. The stamp law provides an exception for "independently obtained information." Wis. Stat. § 139.91. Independently obtained information may be used against taxpayers in any criminal proceeding.

§ 139.91. For example, nothing in the stamp law prohibits the State from using information independently obtained by placing a law enforcement agent outside the location where drug stamps are sold. Consequently, a law enforcement agent surveilling the DOR's tax stamp purchase outlet could photograph, identify, or follow taxpayers to their car, to their home, even to their drug manufacturing plant. The information this officer gathered could then be used in any criminal proceeding against the taxpayer. § 139.91. A dealer purchasing drug stamps in person faces a serious risk of providing prosecutors with incriminating information.

¶ 20. Nonetheless, by allowing tax stamps to be purchased by mail, the DOR offers a means by which dealers may purchase drug stamps without providing prosecutors with incriminating information. Therefore, the danger that the information will be available for criminal prosecution is not substantial. The purchase by mail provision allows the dealer to select a method of payment that will reveal his or her name (or pseudonym) and address only to the DOR. The confidentiality provision of the statute expressly prohibits the DOR from revealing facts, such as the dealer's name and address, obtained in administering the tax stamp. Wis. Stat. § 139.91. Therefore, this information is not available to prosecutors in a criminal proceeding. Consequently, the statute provides an avenue by which dealers may purchase the stamps without incriminating themselves. Although a dealer unavoidably runs the risk of incriminating himself or herself when he or she purchases the tax stamp in person, the payment by mail procedure coupled with the confidentiality provision assures the dealer of constitutional protection against self-incrimination. By providing a dealer with

74

protection coextensive to that offered by the privilege against self-incrimination, the purchase requirement of the stamp law, standing alone, would pass constitutional muster.

¶ 21. However, it does not stand alone. Purchasing the stamps is but the first step in the statutory process. Once purchased, drug tax stamps must be affixed to and displayed on the dealer's illegal drugs. Wis. Stat. § 139.89. We must therefore consider the constitutionality of this affix and display requirement. The incriminating nature of the affix and display requirement is without question. The act of affixing and displaying the tax stamps is an incriminating testimonial communication that the dealer knowingly and intentionally possesses a particular quantity of unlawful drugs. Possession of the stamp signifies the possessor's knowledge of the nature of the substance he or she possesses - an element of a drug possession charge - and thus requires self-incrimination. In *Marchetti*, the United States Supreme Court struck down the federal wagering tax law on self-incrimination grounds. The Court recognized that evidence of possession of a federal wagering tax stamp is highly incriminating testimonial evidence. Likewise, the affix and display requirement of the stamp law has the direct and unmistakable consequence of incriminating any dealer who complies with the law.

¶ 22. The danger that the information will be available for criminal prosecution is also evident. Tax stamps are readily available to assist the State in establishing that defendants knew that the substance in their possession was a controlled substance. Under our controlled substances statutes, proof that the defendant knew or believed that the substance was a controlled substance is an element of the crime that

75

must be proved by the State. *Poellinger*, 153 Wis. 2d at 493.

¶ 23. The confidentiality provision does not prevent the State from using the presence of affixed drug stamps against dealers and therefore does not save the stamp law. As the court of appeals recognized, while Wis. Stat. § 139.91 prohibits the use of information obtained by the DOR in administering the tax, the presence of affixed tax stamps is not "information obtained by the Department." *Hall*, 196 Wis. 2d at 865. The stamp law does not prohibit the State from using tax stamps to prove a taxpayer's knowledge of the nature of the controlled substance. Nor does acquisition of tax stamps create immunity for a dealer from criminal prosecution. Wis. Stat. § 139.90.

¶ 24. Furthermore, nothing in the statute prohibits the State from using the stamps affixed to controlled substances in a prosecution for unstamped drugs. For example, if the State found stamped and unstamped drugs during an arrest, the stamp law would not prevent the State from using the stamps to establish the defendant's knowledge of the illegal nature of and intent to possess the unstamped drugs. Consequently, Hall was required, under pain of criminal prosecution, to affix drug stamps to his illegal drugs, and he could reasonably have supposed that the presence of the affixed stamps could be used against him by prosecuting authorities. Accordingly, Hall has satisfied the second prong of the *Marchetti* test.

¶ 25. Finally, we consider the third prong of *Marchetti*, whether the compelled information could provide a significant link in a chain of evidence tending to establish guilt. In other words, does the statute protect dealers from derivative use of the compelled

information? The court of appeals acknowledged that the stamp law, on its face, only provides a dealer with protection from direct - not derivative - use of information obtained by the DOR through compliance with the statute. *Hall*, 196 Wis. 2d at 866–68. We agree. The stamp law allows the State to use compelled information as an investigative lead to information used against dealers in a criminal proceeding. Thus Hall has satisfied the third prong of *Marchetti*. Having satisfied all three prongs of *Marchetti*, we conclude that the drug tax stamp law unconstitutionally compels self-incrimination, absent some preexisting statutory confidentiality or immunity provision providing protection equivalent to that of the Fifth Amendment.

## II.

¶ 26. This brings us to our second issue: whether Wis. Stat. § 139.91, the confidentiality provision of the stamp law, on its face, provides Hall with protection as broad as the protection offered by the privilege against self-incrimination.

¶ 27. The privilege can be replaced by a sufficient grant of immunity. *Kastigar v. United States*, 406 U.S. 441 (1972). Therefore, the question becomes whether the stamp law provides such immunity. The privilege against self-incrimination may not properly be asserted if other protection is granted which " 'is so broad as to have the same extent in scope and effect' as the privilege itself." *Marchetti*, 390 U.S. at 58 (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 12 S.Ct. 195, 206 (1892)). If coextensive protection exists, the taxpayer could not reasonably suppose that the incriminating information would be available for use in a criminal proceeding. The State argues that the stamp

law's confidentiality provision provides Hall with coextensive protection. We disagree with the State.

¶ 28. First, we examine the extent of the privilege. The scope of the privilege against self-incrimination requires protection against derivative as well as direct use of incriminating information. This privilege protects against any disclosure that the witness reasonably believes could be used, or could lead to other evidence that could be used, in a criminal prosecution. *Kastigar*, 406 U.S. at 444–45. The information need only furnish a "link in the chain of evidence . . ." against the defendant. *Hoffman v. United States*, 341 U.S. 479, 486 (1951); *Kastigar*, 406 U.S. at 460 (an investigatory lead). Where compliance with the requirements of a statute necessarily would result in self-incriminating communications, a proper claim of the constitutional privilege against self-incrimination provides a full defense to prosecutions under that statute.

¶ 29. Although the court in *Heredia* relied on the anonymity requirement of the confidentiality provision to find legislative intent of confidentiality, a closer examination of the statute reveals the inaccuracy of that interpretation. As acknowledged by the court of appeals, the confidentiality provision of the drug tax stamp law, on its face, bars only the direct use of information against a dealer in a criminal prosecution. *Hall*, 196 Wis. 2d at 867–68. The stamp law exhibits a lack of protection from derivative use in several ways.

¶ 30. The breadth of the immunity exception in Wis. Stat. § 139.91 creates a real danger that the information will be used in situations in which taxes are not at issue. The first sentence of the confidentiality provision prohibits the DOR from revealing facts obtained in

the administration of the stamp law. However, the statute provides no penalty for unlawful dissemination. Furthermore, the last sentence of the same provision allows information obtained by the DOR to be used "in connection with a proceeding involving possession of schedule I. . .or schedule II controlled substances on which the tax has not been paid. . ." as well as "in connection with taxes due under s. 139.88 from the dealer." § 139.91. Thus, in a prosecution for possession with intent to deliver cocaine for which no tax has been paid, any information learned from a defendant who had paid the tax on other, stamped, cocaine could be used against him or her as long as he or she had paid no tax on the cocaine directly involved in the possession charge. For example, if a dealer possesses 25 grams of cocaine, but buys tax stamps for only 15 grams, the statute does not bar the DOR clerk from identifying the dealer as having admitted, by application for the stamps, to possession of 15 grams of cocaine, and thus knowledge and intent that the unstamped 10 grams are illegal cocaine and the dealer intended to possess them. The ability of the State to use the information obtained even when the payment of taxes is not at issue distinguishes the statute from statutes which have been upheld in other states. For a discussion of these statutes and cases, see below.[3]

---

[3] In its brief, the State contends that the Wisconsin stamp law is constitutional because § 139.91 "guarantees the same protection given by the confidentiality provisions in other states where the drug tax stamp laws were found to be in compliance with fifth amendment requirements." A comparison of the Wisconsin stamp law and the statutes upheld in the cases cited by the State's illustrates the fallacy of this assertion.

Section § 139.91 lists two criminal proceedings in which information obtained by the department may be revealed: (1)

██

¶ 31. We conclude that, while providing some protection, the stamp law, on its face, fails to provide

proceedings involving possession of controlled substances on which the tax has not been paid, and (2) proceedings in connection with taxes due under the stamp law. The confidentiality provisions of the stamp laws upheld in the cases cited by the State all include the second exception. However, none of the stamp laws referred to by the State, that have been upheld as constitutional, allow compelled, self-incriminating information to be used in proceedings involving possession of drugs on which the tax has not been paid. Thus, none of the cases cited by the State involve statutes that allow derivative use to the extent allowed by the Wisconsin stamp law.

We quote these cases, cited by the State, and the statutes which they upheld to make plain the fallaciousness of the State's argument: "[N]or can any information contained in such a report or return be used against a dealer in any criminal proceeding, except in connection with a proceeding involving taxes due under this chapter, unless such information is independently obtained." *Briney v. State Dept. of Revenue*, 594 So. 2d 120, 122 (Ala. Civ. App. 1991) (quoting Ala. Code § 40–17A–13 1975 (Cum. Supp. 1990)). *Clifft v. Ind. Dept. of State Revenue*, 660 N.E.2d 310 (1995), upheld Indiana's stamp law which provides, in pertinent part: "Confidential information acquired by the department may not be used to initiate or facilitate prosecution for an offense other than an offense based on a violation of this chapter." Ind. Code Ann. 6–7–3–9 (West. Supp. 1994). Iowa's stamp law "explicitly prohibits any information obtained from a dealer, pursuant to compliance with 421A, from being released or used against the dealer in any criminal proceeding except in connection with a proceeding involving taxes due under chapter 421A." *State v. Godbersen*, 493 N.W.2d 852, 857 (1992) (citing Iowa Code § 421A.10).

The stamp law at issue in *State v. Davis*, 787 P.2d 517 (Utah 1990), failed to contain a confidentiality provision. The Utah Court of Appeals upheld the stamp law because it made no

the taxpayer with protection coextensive with the privilege against self-incrimination. Because the confidentiality provision does not provide adequate protection, the stamp law does not meet Hall's constitutional challenge.

provision for disclosure of any identifying information to prosecuting authorities. However, when reviewing the stamp law, the Utah court had the benefit of subsequent legislation to aid its interpretation of legislative intent. The 1989 amendment to Utah's stamp law provides: "None of the information contained in a report, form, or return or otherwise obtained from a dealer in connection with this section may be used against the dealer in any criminal proceeding unless it is independently obtained, except in connection with a proceeding involving taxes due under this chapter from the dealer making the return." *Id.* (quoting Utah Code Ann. § 59–19–105 (1989)). This amendment, significantly different from Wisconsin's confidentiality provision, was upheld by the Utah Supreme Court in *Zissi v. State Tax Comm'n of Utah*, 842 P.2d 848 (1992).

Finally, the State contends that the Kansas stamp law, upheld by the Kansas Supreme Court, is "almost identical" to the Wisconsin stamp law because "information obtained through compliance with the act could not be used in any criminal proceedings, except those involving violations of the act itself." State's Brief at 12. The State is correct that the Kansas stamp law explicitly prohibits information contained in a report or return required by the Kansas act to be used "against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this act from the taxpayer making the return." *State v. Durrant*, 769 P.2d 1174, 1178 (1989) (quoting Kan. Stat. Ann. § 79–5206 (1988 Supp.)) As we have explained, this confidentiality provision is not "identical" or even "almost identical" from the stamp law before us.

## III.

¶ 32. The above conclusion leads us to the third issue: whether the confidentiality provision may be construed in a manner which provides protection coextensive with the privilege against self-incrimination. The State urges us to "save" this unconstitutional statute by construing it to provide both direct and derivative use immunity.

¶ 33. We recognize the strong presumption of constitutionality that must guide our examination of this statute. This presumption requires Hall to demonstrate the statute's unconstitutionality beyond a reasonable doubt. *Brandmiller v. Arreola*, 199 Wis. 2d 528, 544 N.W.2d 894, (1996). But the presumption of constitutionality presents a high hurdle, not an insurmountable barrier. Although this court will strive to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute. The statute before us cannot be construed as the State argues.

¶ 34. The crux of the problem is this: the language of the stamp law fails to provide taxpayers with any protection against derivative use of incriminating information.

¶ 35. While a statute should be held valid whenever by any fair interpretation it may be construed to serve a constitutional purpose, courts cannot go beyond the province of legitimate construction to save it, and where the meaning is plain, words cannot be read into it or out of it for the purpose of saving one or other possible alternative. *Heimerl v. Ozaukee County*, 256 Wis. 151, 155 (1949) (citing *State ex rel. Reynolds v. Sande*, 205 Wis. 495, 501, 503 (1931). On its face, a

plain reading of the statute provides no protection against derivative use

¶ 36. The State argues that the Court's decision in *United States v. X-Citement Video, Inc.*, 115 S.Ct. 464 (1994), allows this court to bridge the great gap between the plain meaning of this statute and the presumption of constitutionality. Indeed, the court of appeals applied a "saving" construction to this statute. *Hall*, 196 Wis. 2d at 867–68. It ruled that Wis. Stat. § 139.91 precludes the State from using information gained as a result of a tax stamp purchaser's compliance with the statute, either directly or derivatively, including the presence of affixed stamps, in a subsequent drug prosecution against the taxpayer. *Id.* Although the court of appeals justifies this construction in a well-written and well-reasoned opinion, we must reluctantly conclude that in the exercise of judicial restraint we cannot leap that far.

¶ 37. To read the stamp law to bar derivative, as well as direct use, would be rewriting the statute, not merely correcting a scrivener's error. *X-Citement Video*, 115 S.Ct. at 474 (Scalia, J., dissenting) Rather than the State's argument, we prefer the Court's reasoning in *United States v. Albertini*, 472 U.S. 675, 680 (1985), where the Court refused to add language to an unambiguous statute:

> Statutes should be construed to avoid constitutional questions, but this interpretative canon is not license for the judiciary to rewrite language enacted by the legislature. Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress. . . .Proper respect for those powers implies that '[s]tatutory construction must begin with the language employed by Congress and the assump-

tion that the ordinary meaning of that language accurately expresses the legislative purpose.' (Cite omitted.)

¶ 38. Presented as we are with every indication in the statute itself that the legislature had no purpose to bar derivative use, nevertheless, this court's primary purpose in interpreting a statute is to effectuate the legislature's intent. *State v. Hopkins*, 168 Wis. 2d 802, 814, 484 N.W.2d 549 (1992).

¶ 39. The court need not look to the history of a statute clear on its face, *Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 117, 513 N.W.2d 592 (1994) (Steinmetz, J. dissenting). However, even the legislative history of the statute supports the conclusion that the legislature intended to bar direct use, but not derivative use.

¶ 40. The legislative history supports the legislative intent to bar direct, but not derivative, use for several reasons: (1) Legislative history reveals that the legislature's purpose for drafting the original drug stamp tax bill was to learn the identity of drug dealers. Had the legislature intended to bar both direct as well as derivative use, that purpose could not have been effectuated. (2) Even in early drafts, the legislature knew that the stamp law presented self-incrimination problems of constitutional dimension, yet chose not to revise the bill. (3) The legislature was aware of how to draft a clear, unambiguous statute providing both direct and derivative use immunity, yet chose not to do so.

¶ 41. The stamp law is the product of several attempts by the Senate and Assembly to create a drug tax stamp statute. It was enacted during a special ses-

sion of the legislature as part of 1989 Wis. Act 122, a wide-ranging amalgamation of anti-drug measures.

¶ 42. History reveals that the legislature's purpose for drafting the original drug stamp tax bill was to learn the identity of drug dealers. In 1987, Representative Foti asked the Legislative Reference Bureau to draft a drug tax statute. Draft Request Form for 1987 AB 519. He sought to solve the problem of "hav[ing] no control over drug dealers or knowledge of who they are" by "[making] them pay a tax on their drugs." 1987 AB 519 Draft Request Form. The following excerpt from a memorandum attached to the draft request acknowledges the bill's supporters' intent to allow the State to use the drug tax law to obtain information about drug dealers.

> The only real objection anyone had to it was its constitutionality but they have gotten around that. A drug dealer, according to the bill, can go to the Department of Revenue and obtain a stamp and the information has to be kept confidential. They cannot call the police and tell them that so and so has a drug tax stamp. It gives them 5th amendment protection. It does *not* legalize possession. If a dealer is caught selling a drug the law enforcement people can then contact the revenue department and obtain any information on file. The idea behind the bill is to get at the dealers.

¶ 43. Compelling drug dealers to provide self-incriminating information is an unconstitutional means of "knowing who the drug dealers are." The unlawfulness of an activity does not prevent the activity from being taxed. However, a statute imposing a tax on unlawful activity cannot be sustained when the methods of collecting the tax are in conflict with the

privilege against self-incrimination. *Marchetti*, 390 U.S. at 44. While the State may lawfully tax controlled substances, the means used must be constitutional.

¶ 44. The lack of a revenue raising purpose underlying this act adds further weight to the legislative history expressing the unconstitutional purpose of "knowing who [drug dealers] are" and "get[ting] at [them]." The drug stamp tax law is a tax law. Yet the legislature never expected this tax law to raise revenue. The fiscal estimate of every draft of the drug tax bills exhibits a lack of revenue producing purpose. 1989 Act 122 Fiscal Estimate ("[b]ased on the experience of other states. . .revenues from sales of tax stamps would likely be minimal [and] actual tax collections generally amount to only a small portion of the total assessments since collection of the controlled substances tax is difficult."); 1989 AB 633 Fiscal Estimate (estimating "minimal" sales revenues); 1989 SB 356 Fiscal Estimate (anticipating minimal sales and minimal collection of penalties); 1989 SB 295 Fiscal Estimate (anticipating that this bill would have "no fiscal impact on state or local government."); 1987 AB 519 Fiscal Estimate ("likely that that [sic] the revenue from the tax would be very small."). We must pause and reflect when legislative history reveals that a tax statute was enacted without the expectation that it raise revenue.

¶ 45. Finally, most troubling is the revelation in the legislative history that the legislature was well aware of how to craft a confidentiality provision that would provide dealers with both direct and derivative use immunity. Not only does the Minnesota statute, attached to the draft request form of 1989 Bill 633, provide the legislature with a model of a confidentiality provision that prohibits both the direct and derivative use of information compelled by the stamp law, the

legislature itself, in the same act as the stamp law, created an immunity clause that provides both direct and derivative use immunity. Wis. Stat. § 972.085.

¶ 46. A copy of the confidentiality provision for the Minnesota drug tax statute § 297D was attached to the bill request form for 1989 Assembly Bill 633. This Minnesota confidentiality provision states that

> [no] information contained in such a report or return or obtained from a dealer be used against the dealer in any criminal proceeding, unless independently obtained, except in connection with a proceeding involving taxes due under this chapter from the dealer making the return.

Compare this with the last sentence of Wis. Stat. § 139.91:

> No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of schedule I controlled substances or schedule II controlled substances on which the tax has not been paid or in connection with taxes due under s. 139.88 from the dealer. (Emphasis added.)

¶ 47. The Minnesota statute prohibits the use of information compelled by its drug tax stamp law except in a proceeding involving taxes due against the dealer making the return. In contrast, Wis. Stat. § 139.91 allows the use of information compelled by the stamp law in proceedings involving taxes due from the dealer and in proceedings involving controlled substances on which the tax has not been paid. Consequently, the stamp law allows prosecutors to use information compelled by the act - the affixed stamps - against dealers

87

in criminal proceedings involving unstamped drugs. Herein lies the stamp law's fatal flaw.

¶ 48. The legislature ratified this constitutionally flawed provision despite awareness that it posed potential problems, and in light of a solution to these problems. A memorandum to the Legislative Reference Bureau ("LRB") from the DOR regarding the confidentiality provision directs the drafters' attention to the potential for claims of the self-incrimination privilege by drug dealers:

> The difficulty in maintaining confidentiality could result in dealers claiming that the requirement to pay the controlled substances tax violates their constitutional right against self-incrimination. There have been successful challenges of similar taxes on illegal activities in both state and federal courts.

¶ 49. Memo from DOR's Eng Braun to the LRB. June 17, 1987. The legislators knew they were treading constitutionally treacherous waters. And, when enacting the stamp law, they had before them a statute which had been scrutinized and upheld by the Minnesota Supreme Court just the year before. *Sisson*, 428 N.W.2d 565. Yet they chose not to follow this model. Instead, our legislature chose to enact the stamp law's confidentiality provision as originally written.

¶ 50. Finally, the most striking illustration of legislative intent is the contrast between the "use" language in Wis. Stat. § 139.91 and the "use" language in Wis. Stat. § 972.085 of the same act which clearly provides direct and derivative use immunity. Section 972.085 provides:

> Immunity from criminal or forfeiture prosecution under [listed provisions - not listing § 139.87 et seq.] provides immunity only from the use of the com-

pelled testimony or evidence in subsequent criminal or forfeiture proceedings, as well as immunity from the use of evidence derived from that compelled testimony or evidence.

¶ 51. This statute, included in the same act as the stamp law, provides both direct and derivative use immunity. Obviously, the legislature knew how to immunize dealers under Wis. Stat. § 139.91 from direct and derivative use, yet chose different language. Consequently, we arrive at the inevitable conclusion that the legislature knew how to craft a confidentiality provision prohibiting derivative use, yet deliberately chose not to do so.

¶ 52. We find no basis in the language of the statute nor in its legislative history for the saving construction applied by the court of appeals.

> 'A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score.'. . .But avoidance of a difficulty will not be pressed to the point of disingenuous evasion. Here the intention of the Congress is revealed too distinctly to permit us to ignore it. . . .[T]he problem must be faced and answered.

*Welsh, II v. United States*, 398 U.S. 333, 355 (1970) (Harlan, J., concurring) (quoting J. Cardozo in *Moore Ice Cream Co. v. Rose*, 289 U.S. 373, 379 (1933). In this case, the language and history of the drug tax stamp law plainly demonstrate that the legislature never intended to prohibit derivative use of information compelled by the stamp law.

¶ 53. A properly drafted drug tax stamp law is constitutional and will serve the societal purposes for

which it is intended without violating constitutional protections. *See* State Drug Taxes: A Tax We Can't Afford, Rutgers L.J., Vol. 23:657 (analyzing the challenges facing a legislature in drafting a drug tax stamp law and proposing a model law that meets the constitutional challenges) (1992). The Wisconsin Drug Tax Stamp Law is not such a statute. We agree that if the legislature had written the statute the way that the court of appeals rewrote it, it would likely resolve the constitutional infirmities. However, the remedy rests with the legislature. It is the legislature's function to amend the statute where amendment is found necessary. Where a statute plainly includes, as this one does, only immunity from direct use of compelled incriminating information, we fail to see how the court would be justified in adding thereto the following limitation, 'furthermore, we provide immunity from derivative use.' This in effect is what the State would have us do. Tempted as we may be to rewrite the confidentiality provision, as the court of appeals did and as the legislature very likely will, we would be setting a dangerous precedent to allow such a judicial usurpation of the legislature's role. The checks and balances needed to sustain a democratic government stay our hands from the pen.

¶ 54. We hold that Wis. Stat. § 139.91, plainly and unambiguously provides direct, but not derivative use immunity. Consequently, the statute fails to provide Hall with protection coextensive with the privilege against self-incrimination. Accordingly, we reject the court of appeals' construction of the statute and conclude that the stamp law violates Hall's privilege against self-incrimination.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 55. JON P. WILCOX, J. (*dissenting*.) I dissent because I conclude that this court must construe the confidentiality provision found in Wis. Stat. § 139.91 (1993–94)[1] (the "confidentiality provision") to provide protection coextensive with the Fifth Amendment. I agree that the affix and display requirement of the drug tax stamp law[2] (the "stamp law") would unconstitutionally compel self-incrimination if it allowed the State to use a drug tax stamp as evidence in any criminal proceeding not related to payment of the tax. However, the majority misinterprets the legislative history of the stamp law and fails in its duty to preserve the statute.

¶ 56. The majority concludes that "the affix and display requirement of the stamp law has the direct and unmistakable consequence of incriminating any dealer who complies with the law." Majority op. at 75. It further asserts that the confidentiality provision does not provide protection coextensive with the Fifth Amendment. Majority op. at 76, 82. The majority interprets the confidentiality provision to allow the State to use the stamps found on some illegal drugs to establish the defendant's knowledge of the illegal nature of and intent to possess other illegal unstamped drugs. Majority op. at 78–79. The majority bases this conclusion on the language of the confidentiality provision. *Id.*

¶ 57. The confidentiality provision of Wis. Stat. § 139.91 provides:

---

[1] Unless otherwise stated, all future statutory references are to the 1993–94 volume.

[2] Wis. Stats. ch. 139, subch. IV (1993–94).

> The department may not reveal facts obtained in administering this subchapter, except that the department may publish statistics that do not reveal the identities of dealers. Dealers may not be required to provide any identifying information in connection with the purchase of stamps. No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, *except in connection with a proceeding involving possession of schedule I controlled substances or schedule II controlled substances on which the tax has not been paid or in connection with taxes due under s. 139.88 from the dealer.*

(Emphasis added.) The majority reads the emphasized exception to mean that the State may use any information obtained through the administration of this subchapter in a prosecution for criminal possession of illegal drugs that were not stamped. Majority op. at 78–79. Therefore, according to the majority, affixing and displaying the stamps would constitute incriminating oneself. I believe that the majority misinterprets this provision.

¶ 58. First, the language of the confidentiality provision does not unambiguously create an exception for criminal proceedings for possession of illegal drugs. The legislature did not state: "except in connection with a proceeding *for* possession," instead the legislature stated: "except in connection with a proceeding *involving* possession of [illegal drugs] on which the tax has not been paid. . . ." (Emphasis added.) Wis. Stat. § 139.91. The logical meaning of this passage ·is that information not independently obtained can be used, not in a criminal possession proceeding, but in a proceeding under § 139.95. This section provides:

**(1)** Any dealer who *possesses* a schedule I controlled substance or schedule II controlled substance that does not bear evidence that the tax under s. 139.88 has been paid shall pay *in addition to any tax under s. 139.88*, a penalty equal to the tax due. The department shall collect penalties under this subchapter in the same manner as it collects tax under this subchapter.

**(2)** A dealer who *possesses* a schedule I controlled substance or schedule II controlled substance that does not bear evidence that the tax under s. 139.88 has been paid may be fined not more than $10,000 or imprisoned for not more than 5 years or both.

**(3)** Any person who falsely or fraudulently makes, alters or counterfeits any stamp or procures or causes the same to be done or who knowingly utters, publishes, passes or tenders as true any false, altered or counterfeit stamp or who affixes a counterfeit stamp to a schedule I controlled substance or schedule II controlled substance or who *possesses* a schedule I controlled substance or Schedule II controlled substance to which a false, altered or counterfeit stamp is affixed may be fined not more than $10,000 or imprisoned for not more than 10 years or both.

(Emphasis added.) The purpose of this section is to set forth the penalties for violations of the stamp law.

¶ 59. In addition to these penalties, a dealer who does not comply with the stamp law will have to pay the taxes due under § 139.88. Proceedings for unpaid taxes are referred to in the second part of the exception to the confidentiality provision: ". . . or in connection with taxes due under s. 139.88 from the dealer." Wis. Stat. § 139.91. Accordingly, under this interpretation, each of the exceptions serves a distinct purpose.

93

¶ 60. This construction of the confidentiality provision is also supported by legislative history. To lay the groundwork for our analysis we must first present an overview of the legislative history of the stamp law. The drug tax stamp bill that eventually passed was the result of several attempts to enact such a law. The first bill introduced in Wisconsin on this subject was 1987 AB 519. The legislative history of this bill is relevant to 1989 Wis. Act 122 because the confidentiality provision has similar language[3] and because it may have been the original source for much of the language in the stamp law. In 1989, several more bills on this subject were proposed: (1) 1989 SB 295, introduced on October 3, 1989, (2) Oct. 1989 Spec. Sess. SB 6, introduced on October 12, 1989, (3) Oct. 1989 Spec. Sess. AB 6, introduced on October 24, 1989, (4) 1989 SB 356, introduced on November 1, 1989, (5) 1989 AB 633, introduced on November 2, 1989, and (6) Oct. 1989 Spec. Sess. AB 12 (the "Governor's 1989 budget bill"), introduced on November 8, 1989. Each of these bills included confidentiality provisions similar to the one found in Wis. Stat. § 139.91.[4] Finally, on November 9, 1989, Oct.

---

[3] The confidentiality provision of 1987 AB 519 stated:

77.97 CONFIDENTIALITY. The department may not reveal facts contained in a return required under s. 77.94. No information contained in such a return may be used against the dealer in any criminal proceeding, unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed controlled substances or taxes due under s. 77.93 from the dealer making the return.

[4] The following confidentiality provision was included in 1989 SB 295 and 989 AB 633:

77.97 CONFIDENTIALITY. The department may not reveal facts contained in a return required under s. 77.94, except that the department may publish statistics that do not reveal the identities

## 1989 Spec. Sess. Substitute Amend. 1 to Oct. 1989 Spec. Sess. AB 12 (the "substitute amendment to the

of dealers or contents of individual returns. Dealers may not be required to provide any identifying information on returns. No information contained in a return may be used against the dealer in any criminal proceeding, unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed controlled substances or taxes due under s. 77.93 from the dealer making the return.

1989 SB 356 contained a slightly different provision:

77.97 CONFIDENTIALITY. The department may not reveal facts contained in a return required under s. 77.94. No information contained in a return may be used against the dealer in any criminal proceeding, unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed controlled substances or taxes due under s. 77.93 from the dealer making the return.

The confidentiality provision found in Oct. 1989 S.S. SB 6 and Oct. 1989 S.S. AB 6 provided:

139.91 CONFIDENTIALITY. The department may not reveal facts obtained in administering this subchapter, except that the department may publish statistics that do not reveal the identities of dealers. Dealers may not be required to provide any identifying information in connection with the purchase of stamps. No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed controlled substances or taxes due under s. 139.88 from the dealer making the return.

Finally, the Governor's budget bill contained the following provision:

77.97 CONFIDENTIALITY. The department may not reveal facts contained in a return required under s. 77.94, except that the department may publish statistics that do not reveal the identities of dealers or the contents of individual returns. Dealers may not be required to provide any identifying information on returns. No information contained in a return may be used against the dealer in any criminal proceeding, unless that information has been independently obtained, except in connection with a proceeding

1989 budget bill") was introduced and eventually enacted as 1989 Wis. Act 122.[5] In considering the legislative history of 1989 Wis. Act 122, a review of each of these bills is relevant as each used similar language and many directly used the drafts of earlier bills.[6]

¶ 61. The majority contends that the legislative history supports its conclusion that the confidentially provision does not bar the use of derivative information in criminal proceedings not related to the tax. Majority op. at 84. The majority bases this conclusion on three points: "(1) Legislative history reveals that the legislature's purpose for drafting the original drug stamp tax bill was to learn the identity of drug dealers. . . . (2) Even in early drafts, the legislature knew that the stamp law presented self-incrimination problems of constitutional dimension, yet chose not to revise the bill. (3) The legislature was aware of how to draft a clear, unambiguous statute providing both direct and derivative use immunity, yet chose not to do so." *Id.* at 84. In using these bases to reach such a conclusion, the majority misinterprets and overemphasizes some por-

involving possession of untaxed controlled substances or taxes due under s. 77.93 from the dealer making the return.

[5] Although the confidentiality provision was slightly amended by 1991 Wis. Act 39, these changes do not affect our analysis.

[6] Oct. 1989 S.S. AB 12 contains previous drafts that can be traced through the LRB reference number to 1989 SB 295, and Oct. 1989 S.S. Substitute Amendment 1 to AB 12 uses language from Oct. 1989 S.S. SB 6 and Oct. 1989 S.S. AB 6. The drafting record of 1989 SB 295 contains a draft of 1989 AB 633. Similarly, the drafting record, of Oct. 1989 S.S. AB 6 contains a draft of 1989 SB 295. Finally, according to the drafting record 1989 SB 356 is a redraft of 1987 AB 519 and also uses language from a draft of 1989 AB 633.

tions of the legislative history while ignoring other, more pertinent, information.

¶ 62.　The majority's first point, that the legislature's purpose in drafting the stamp tax bill was to learn the identity of drug dealers, is based on the draft request form and a supporting memorandum found in the drafting record of 1987 AB 519. Majority op. at 85. In support of the majority's assertion, the majority cites the following description of the problem that the bill sought to address from the Drafting Request Form: "We have no control over drug dealers or knowledge of who they are." *Id.* at 85. The majority also cites part of a memorandum that was attached to the draft request. *Id.* The memorandum states:

> I talked to Mark Warnsing, Legislative Assistant to Sen. Barkhausen in Illinois about the drug bill. . . . He said it is a bill that is pretty hard to vote against. The only real objection anyone had to it was its constitutionality but they have gotten around that. A drug dealer, according to the bill, can go to the Department of Revenue and obtain a stamp and the information has to be kept confidential. They cannot call the police and tell them that so and so has a drug stamp. It gives them 5th amendment protection. It does not legalize possession. If a dealer is caught selling a drug the law enforcement people can then contact the evenue [sic] department and obtain any information on file. The idea behind the bill is to get at the dealers. They are not concerned with an individual who has drugs in his possession because it would fill up the courts. An amendment would make the cost of the stamps 4 times the face value of each stamp instead of 100%. He said if you have any questions to call him.

When the information from the drafting record cited by the majority is read in isolation, it appears that the confidentiality provision of 1987 AB 519 was not intended to provide protection coextensive with the Fifth Amendment. However, the majority fails to fully consider the legislative history of 1987 AB 519.

¶ 63. A consideration of all the material contained in the drafting record reveals that Representative Foti intended to introduce a bill that mirrored the one that had been introduced in Illinois. This is significant because the Illinois confidentiality provision provides protection coextensive with the Fifth Amendment in the clearest of terms. The language of the Illinois confidentiality provision can be found in the drafting record for 1987 AB 519. The Illinois provision provided:

> Section 13. Neither the Director nor a public employee may reveal facts contained in a report or return required by this Act, nor can any information contained in such a report or return be used against the dealer in any criminal proceeding, unless such information has been independently obtained, except in connection with a proceeding involving taxes due under this Act from the taxpayer making the return.

This provision, which unambiguously precludes the use of direct and derivative information, was the basis for the confidentiality provision in 1987 AB 519.

¶ 64. Further indications that this bill was intended to mirror the Illinois bill can be found in the previously mentioned drafting request form and in the memorandum which accompanied the drafting request form. Contrary to the majority's interpretation, the apparent purpose of the memorandum was to para-

phrase an explanation of the Illinois drug tax stamp bill given by Mark Warnsing, a legislative assistant to Illinois State Senator Barkhausen. In the closing line of the memorandum, the drafting attorney is told: "[Warnsing] said if you have any questions to call him." A phone number was written next to Mark Warnsing's name in the typed memorandum. Additionally, in response to a question in the drafting request which asked "Provide names and phone numbers of persons we may contact for more information," the following response was typed in: "Sen. Barkhausen, State of Illinois." This evidence suggests that the drafting attorney was told to draft a bill similar to the one from Illinois. This is significant because it suggests that Representative Foti wanted the bill to include a confidentiality provision that provided the same protection as the one in the Illinois bill—a confidentiality provision that provided protection coextensive with the Fifth Amendment.

¶ 65. Additional evidence of the legislature's intention to provide protection coextensive with the Fifth Amendment can be found in the drafting record of 1987 AB 519. First, after the above quoted memorandum was written on May 20, 1987, and after the Draft Request Form was filled out on May 21, 1987, the Department of Revenue (DOR) sent a memorandum to the Legislative Reference Bureau (LRB) drafting attorney for 1987 AB 519. This memorandum addressed several technical problems with an earlier draft of the bill including problems with the confidentiality provision. The memorandum stated in relevant part:

> The confidentiality provision should clearly specify how the rules for the controlled substances tax differ from the general confidentiality rules for the

department under s. 71.11(44). Under the general confidentiality rules for other state taxes, law enforcement officials can request access to the department's records.

. . .

The difficulty in maintaining confidentiality could result in dealers claiming that the requirement to pay the controlled substances tax violates their constitutional right against self-incrimination. There have been successful challenges of similar taxes on illegal activities in both state and federal courts.

This shows a concern over confidentiality and a desire to ensure that the statute did not violate the Fifth Amendment.

¶ 66. An even stronger indication of the legislature's intent can be found in the Analysis by LRB. Part of this analysis stated: "Information from a return is confidential and may not be used in any criminal proceeding except those related to the tax itself." This statement was included as an explanation at the beginning of the bill draft which was circulated to all legislative offices. The analysis was written by the attorney who drafted the bill; he should have known what was intended by Representative Foti.[7] This same language was used in the LRB analysis of the Governor's 1989 budget bill and the substitute amendment to the 1989 budget bill which is the direct source of Wis. Stat. § 139.91. It is likely that almost every legislator read this analysis before voting on the stamp tax bill. Accordingly, this is very strong evidence that the legislature intended that the confidentiality provision

---

[7] A handwritten draft of the analysis was included with the drafting record.

preclude the use of information in any criminal proceeding not related to the tax.

¶ 67. The majority's assertion that 1987 AB 519 was enacted for an unconstitutional purpose, to learn the identity of dealers for use in criminal prosecutions not related to the tax, is not only in conflict with the legislative history of that statute, but is also in conflict with logic. This is because the majority's theory fails to explain why the statute included a confidentiality provision. If the purpose of the statute was to learn the identity of dealers in violation of the Fifth Amendment, there would have been no need for any confidentiality. In fact, the direct use of information, which the majority concedes is precluded by the confidentiality provision, would be the best means of identifying dealers. The absence of an explanation for the presence of the confidentiality provision casts serious doubts on the majority's assertion that 1987 AB 519 was drafted and that the stamp law was enacted for the purpose of identifying dealers and using that information in criminal proceedings not related to the tax.

¶ 68. As a side point, the majority argues that the lack of revenue raising purpose underlying the act suggests that the purpose of the bill was to identify drug dealers. Majority op. at 85-86. On the contrary, this information merely tells us that the purpose was not to raise revenue. It is just as likely that the purpose was simply to provide additional penalties for drug dealers as that it was to identify them.

¶ 69. Finally, the majority contends that further evidence of the unconstitutional purpose of the legislature is provided by the fact that the legislature knew how to craft a confidentiality provision that would provide dealers with both direct and derivative use immunity. Majority op. at 86-89. In support of this

contention the majority cites (1) the fact that the Minnesota confidentiality provision can be found in the drafting record of 1989 AB 633, (2) the fact that the legislature was aware of the potential constitutional problems through a memorandum from DOR that is in the drafting record of 1987 AB 519, and (3) the language used to provide for direct and derivative use immunity in Wis. Stat. § 972.085. *Id.*

¶ 70. Certainly, the confidentiality provision in Wis. Stat. § 139.91 could have been more artfully drafted; however, the fact that it differs from the Minnesota provision and the immunity provisions of Wis. Stat. § 972.085 does not prove that the legislature had an unconstitutional purpose in enacting the stamp law. In fact, a review of the drafting record of 1989 SB 295 indicates that the legislature intended to enact a law that mirrored the Minnesota stamp law. The bill draft request from Senator Te Winkle's office to the LRB drafting attorney states:

> In reference to our discussion earlier today, and further discussion with Senator Te Winkle, I submit this request.
>
> We would like legislation drafted to place a stamp tax on cocaine and marijuana that is similar to Minnesota's law, with the same penalty provisions.
>
> The exception is that we would like to send the revenue from this tax directly to the Metropolitan Enforcement Groups (MEG's) or multi-jurisdictional groups (MJG's) in proportion to the incidence of drug crime in each group's area during the previous year.

The drafting request makes no mention of changing the confidentiality provision or of using the information in a criminal prosecution for possession.

¶ 71. Additionally, the DOR memorandum from the drafting record of 1987 AB 519 that the majority quotes does show that the legislature was aware of the potential for a conflict with the Fifth Amendment; however, it does not prove that the legislature chose to ignore these constitutional concerns. Instead, the legislative history of the stamp law demonstrates that the legislature attempted to provide protection coextensive to the Fifth Amendment in the confidentiality provision and believed that this had been done.

¶ 72. The strongest evidence of this intention is the language from the LRB analysis which states: "Information from a return is confidential and may not be used in any criminal proceeding except those related to the tax itself." This statement was included as part of the circulated bill draft for the first drug tax stamp bill, 1987 AB 519, the Governor's 1989 budget bill, and the substitute amendment to the 1989 budget bill, which was the version enacted as the stamp law.[8] Additional evidence of this intention can be found in the drafting records for the various drug tax stamp bills that were introduced in 1989.

¶ 73. The drafting record for Oct. 1989 Spec. Sess. AB 6 contained as part of the drafting instructions a DOR memorandum entitled "Summary of Controlled Substances Tax Proposal." This memorandum stated in relevant part:

> Confidentiality: Tax information may not be revealed or used against a dealer in a criminal proceeding, unless the information was independently obtained. This restriction does not apply to proceed-

---

[8] It was also included in 1989 SB 295, 1989 SB 356, and 1989 AB 633.

ings involving the possession of untaxed controlled substances or other tax-related proceedings.

A similar description of the confidentiality provision is found in the drafting record for the Governor's 1989 budget bill: "Under your proposal, information from a controlled substance tax return would be confidential and could not be used in any criminal proceeding, except those relating to the tax itself."

¶ 74. Finally, an examination of the drafting record of the substitute amendment to the 1989 budget bill itself and a comparison of the language of that bill with the language in the Governor's 1989 budget bill reveals that the legislature attempted to craft an adequate confidentiality provision. The confidentiality provision of the Governor's 1989 budget bill, which was introduced on November 8, 1989, provided:

> 77.97 CONFIDENTIALITY. The department may not reveal facts contained in a return required under s. 77.94, except that the department may publish statistics that do not reveal the identities of dealers or the contents of individual returns. Dealers may not be required to provide any identifying information on returns. No information contained in a return may be used against the dealer in any criminal proceeding, unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed controlled substances or taxes due under s. 77.93 from the dealer making the return.

In the drafting record for the substitute amendment there is a memorandum dated November 8, 1989, from DOR to the Legislative Fiscal Bureau suggesting changes to the drug stamp tax provisions in the Governor's 1989 budget bill. This memorandum makes

specific suggestions for changes in the confidentiality provision:

> In order to preserve confidentiality, the return requirement should be eliminated. Dealers should be able to purchase drug tax stamps on a cash basis in person or through the mail without having to submit a return which could identify them as a drug dealer.
>
> Giving the Department of Revenue police powers with respect to the drug tax would allow the Department to enforce the tax directly without involving law enforcement authorities. This would simply [sic] administrative [sic] of the tax and ensure a higher level of confidentiality.

Also included in this drafting record is a written motion by Representative Kunicki that follows the suggestions of DOR:

> Move to make the following modifications relating to administration and enforcement of the drug tax:
>
> 1. Require the Department of Revenue to enforce the provisions of the tax, and specify that duly authorized employes of the Department would have all necessary police powers to prevent violation of these provisions.
>
> 2. Delete the requirement that dealers must complete and submit tax returns in order to purchase drug stamps, and amend the bill's confidentiality provision to eliminate references to returns.

Finally, the language of the substitute amendment reflects these changes:

> The department may not reveal facts obtained in administering this subchapter, except that the

105

department may publish statistics that do not reveal the identities of dealers. Dealers may not be required to provide any identifying information in connection with the purchase of stamps. No information obtained by the department may be used against a dealer in any criminal proceeding unless that information has been independently obtained, except in connection with a proceeding involving possession of untaxed marijuana or controlled substances or taxes due under s. 139.88 from the dealer.

The deletion of references to returns in the confidentiality provision in response to the concerns expressed by DOR provides further evidence that the legislature intended to provide complete confidentiality.

¶ 75. I believe that the information contained in the various drafting records is more than sufficient to support the conclusion that the legislature intended to provide protection coextensive with the Fifth Amendment. However, despite the legislature's efforts to provide protection coextensive with the Fifth Amendment, I believe that there is an ambiguity in the language of the confidentiality provision. As the court of appeals astutely pointed out, "While § 139.91, STATS., prohibits the use of information obtained by the Department of Revenue in administering the tax, the presence of affixed stamps is not 'information obtained by the department.'" *State v. Hall*, 196 Wis. 2d 850, 865, 540 N.W.2d 219 (Ct. App. 1995). Although this could be read to allow the unconstitutional use of information gained by anyone other than the department, this court can only declare a statute unconstitutional if there is no viable alternative.

¶ 76. In determining whether a statute violates the constitution, the court must give the statute a great

deal of deference. The party challenging the constitutionality of a statute has the burden to prove that the statute is unconstitutional beyond a reasonable doubt. *State v. Carpenter*, 197 Wis. 2d 252, 263, 541 N.W.2d 105 (1995). Constitutional challenges to a statute must overcome a strong presumption of constitutionality. *State v. Theil*, 188 Wis. 2d 695, 706, 524 N.W.2d 641 (1994). In addition, the United States Supreme Court has stated that it must not construe a statute to violate the Constitution if another reasonable construction is available. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78, 115 S.Ct. 464, 472 (1994); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building and Construction Trades Council*, 485 U.S. 568, 575 (1988); *National Labor Relations Board v. Catholic Bishop of Chicago*, 440 U.S. 490, 500 (1979).[9] The Wisconsin Supreme Court has also recognized this principle. *Demmith v. Wisconsin Judicial Conference*, 166 Wis. 2d 649, 665 FN 13, 480 N.W.2d 502 (1992) ("The court must interpret a statute, if at all possible, in a manner that will preserve the statute as a constitutional enactment."); *State v. Cissell*, 127 Wis. 2d 205, 215, 378 N.W.2d 691 (1985) (There is a strong presumption favoring the constitutionality of a legislative enact-

---

[9] *See also* Patricia A. Burke, Note, *United States v. X-Citement Video, Inc.: Stretching the Limits of Statutory Interpretation?*, 56 La. L. Rev. 937, 943 (1996) ("The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that Congress intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.").

ment, and "[t]his court will construe the statute to preserve it if it is at all possible."); *Browne v. Milwaukee Bd. of Sch. Directors*, 83 Wis. 2d 316, 331, 265 N.W.2d 559 (1978) (When a legislative enactment is attacked as being unconstitutional, "the cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so." (Citations omitted.)); *State ex. rel. Harvey v. Morgan*, 30 Wis. 2d 1, 13, 139 N.W.2d 585 (1966) ("the duty of this court is not to impugn the motives of the legislature, but rather, if possible, to so construe the statute as to find it in harmony with accepted constitutional principles.")

¶ 77. The courts of other states have used this canon of construction as a basis for upholding similar tax stamp laws. *See State v. Durant*; 769 P.2d 1174, 1183 (Kan. 1989) ("This court not only has the authority, but also the duty, to construe a statute in such a manner that it is constitutional if the same can be done within the apparent intent of the legislature in passing the statute."); *State v. Garza*, 496 N.W.2d 448, 454 (Neb. 1993) ("State statutes are presumed to be constitutional, and when a law is constitutionally suspect this court will endeavor to interpret the statute in a manner consistent with the Constitution."); *Zissi v. State Tax Comm'n*, 842 P.2d 848, 857 (Utah 1992) ("[W]e are mindful of our power to save a statute from unconstitutionality by imposing on it a limiting construction. This power permits us to uphold an otherwise questionable statute by tailoring it to conform to the Constitution, which is what we must presume the legislature intended."); *State v. Davis*, 787 P.2d 517, 523 (Utah App. 1990) ("Based upon the foregoing, we find the pre-amendment Utah Drug Stamp Tax Act can be 'found to come within a constitutional

framework,' by construing it to prohibit the use of any information gained as a result of a purchaser's compliance with the act to establish a link in the chain of evidence in a subsequent drug prosecution." (citation omitted)).[10] Accordingly, the majority's declaration that the stamp law is unconstitutional is tantamount to declaring that it is not at all possible for this court to give the stamp law a constitutional construction. I disagree.

¶ 78. I believe that a construction of Wis. Stat. § 139.91 consistent with the intent of the legislature would render the stamp law constitutional. It is clear from an examination of the legislative history that the confidentiality provision was intended to provide protection coextensive with the Fifth Amendment. Accordingly, I would construe the confidentiality provision to preclude the use of any information not independently obtained in any proceeding except those related to the tax itself.

¶ 79. I am authorized to state that Justice Donald W. Steinmetz and Justice N. Patrick Crooks join this dissenting opinion.

---

[10] A number of states have upheld drug tax stamp laws without relying on the constitutional construction argument. *Briney v. State Dept. of Revenue*, 594 So. 2d 120 (Ala. Civ. App. 1991); *Clifft v. Indiana Dept. of State Revenue*, 641 N.E.2d 682 (Ind. Tax 1994); *Sisson v. Triplett*, 428 N.W.2d 565 (Minn. 1988); *State v. Godbersen*, 493 N.W.2d 852 (Iowa 1992).