# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-1368

STEPHEN DYE,

*Petitioner-Appellant,*

v.

MATTHEW J. FRANK,

*Respondent-Appellee.*

————————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99-C-198—**Charles N. Clevert**, **Jr.**, *Judge.*

————————

ARGUED DECEMBER 9, 2003—DECIDED JANUARY 27, 2004

————————

Before FLAUM, *Chief Judge*, and BAUER and ROVNER, *Circuit Judges.*

FLAUM, *Chief Judge.* In 1995, Stephen Dye was convicted by a Wisconsin jury of possession with intent to deliver cocaine. After exhausting his state remedies, Dye filed a petition for writ of habeas corpus in the district court, arguing that his criminal conviction was a violation of the Double Jeopardy Clause of the United States Constitution as he had already been subjected to a tax assessment and seizure based upon his possession of the same drugs. The district court denied Dye's petition and he now appeals. For the reasons stated herein, we reverse.

## I. Background

On March 17, 1994, police executed a search warrant at Stephen Dye's home. During the search, police found 11.9 grams of cocaine. The cocaine did not bear the Wisconsin Controlled Substance Tax Stamps required under Wisconsin Statutes § 139.88, which mandated that drug dealers (defined as those who possess more than seven grams of cocaine) pay an occupational tax upon acquisition or possession of controlled substances.[1]

A few days later, the state of Wisconsin instituted a collection determination procedure to collect the delinquent taxes, interest, and penalty fees due under the Wisconsin Controlled Substance Tax. The state sought and received a court order freezing Dye's assets, and later seized $4,896 from Dye's bank account. The money seized was returned to Dye in August 1994, but the tax assessment remained in effect for an additional three years until the Department of Revenue cancelled the assessment in May 1997.

In addition to the tax assessment and seizure, Dye was subsequently criminally charged for possession of more than five grams of cocaine with intent to deliver. After a trial, Dye was convicted and sentenced to twenty years' imprisonment. Throughout Dye's trial and postconviction proceedings, he argued that the criminal charges following the seizure of his assets constituted double punishment in violation of the Double Jeopardy Clause of the United States Constitution.

---

[1] This version of the tax was found unconstitutional by the Wisconsin Supreme Court in 1997. *See State v. Hall*, 557 N.W.2d 778 (Wis. 1997) (holding that the drug tax violated the privilege against self-incrimination). However, the statute was operative in 1994 when Dye's property was seized and we must therefore determine whether it also enacts a criminal punishment for the purposes of double jeopardy analysis.

## II. Discussion

The Double Jeopardy Clause of the Fifth Amendment consists of three separate constitutional protections: it prohibits a second prosecution for the same offense after an acquittal, it prohibits a second prosecution for the same offense after a conviction, and it prohibits multiple criminal punishments for the same offense. *See Hudson v. United States*, 522 U.S. 93, 99 (1997); *Brown v. Ohio*, 432 U.S. 161, 165 (1977). Dye alleges that a tax seizure followed by criminal imprisonment violates the prohibition against multiple punishments. It is undisputed that Dye's criminal conviction and imprisonment constituted criminal punishment. Thus, the issue becomes whether the tax seizure also constituted criminal punishment.

The drug tax is on its face part of a civil statutory scheme. *See* Wis. Stat. § 139.88 ("There is imposed on dealers, upon acquisition or possession by them in this state, an occupational tax at the following rates . . . [p]er gram or part of a gram of other schedule I controlled substances or schedule II controlled substances, whether pure or impure, measured when in the dealer's possession, $200"). This, however, does not end our analysis as to whether the drug tax enacts a criminal punishment. "Even in those cases where the legislature 'has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect' as to 'transform what was clearly intended as a civil remedy into a criminal penalty.'" *Hudson*, 522 U.S. at 99 (citations omitted).

To determine whether a civil penalty is so punitive that it is should be characterized as criminal punishment, we must consider the factors listed by the Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), and reaffirmed in *Hudson v. United States. See Hudson*, 522 U.S. at 99. These include: (1) whether the sanction involves

an affirmative disability or restraint; (2) whether the sanction has historically been regarded as a punishment; (3) whether the sanction comes into play only upon a finding of *scienter*; (4) whether the sanction promotes the traditional aims of punishment such as retribution and deterrence; (5) whether the behavior which is sanctioned is already a crime; (6) whether the sanction serves an alternative purpose; and (7) whether the sanction appears excessive in relation to the alternative purpose. *See id.* at 99-100. We consider these factors "in relation to the statute on its face" and only "the clearest proof" will transform what the legislature has designated a civil remedy into a criminal punishment. *Id.* at 100.

Using the *Kennedy* factors, we conclude that the Wisconsin drug tax was so punitive in purpose and effect that it constituted a criminal punishment. The Appellee concedes that the Wisconsin legislature enacted the tax in order to promote the traditional aims of punishment such as retribution and deterrence. It is further admitted that the tax is only applied to behavior that is already a crime. And although the Appellee insists that this tax served an alternative revenue-raising purpose, the Wisconsin Supreme Court properly rejected this argument in *State v. Hall*, 557 N.W.2d 778, 790-91 (Wis. 1997). As the Wisconsin Supreme Court noted, "the legislature never expected this tax law to raise revenue," rather, "the legislature's purpose for drafting the original drug stamp tax bill was to learn the identity of drug dealers." *Id.* A "tax" that is created in order to deter criminal conduct, which applies only to those violating criminal laws, and which serves no revenue-generating purpose is divorced from typical tax assessments and strikes this Court as punitive in nature.

Furthermore, the high tax rate is indicative of criminal punishment rather than revenue-raising goals. According to Wisconsin Statutes § 139.88, cocaine is "taxed" at $200 per

gram. The penalty for not paying the tax as soon as one obtains possession of the drugs is another $200 per gram. *See* Wis. Stat. § 71.83. Our research indicates that cocaine has a market value of approximately $80 per gram. *See* Drug Enforcement Administration, *Illegal Drug Price and Purity Report*, *at* http://www.usdoj.gov/dea/pubs/intel/ 02058/02058.html#3 (stating that one gram of cocaine in Chicago had a market value of $75-150 from 1998-2001); *see also United States v. Hill*, 142 F.3d 305, 311 (6th Cir. 1998) (stating that one gram of cocaine has a market value of $83). The tax assessment and penalty therefore total approximately five times the market value of the drugs. A "tax" that is five times the value of the item taxed is remarkably high and is more consistent with punishing ownership of the item than with raising revenue from ownership of the good. *See Dep't of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 780 (1994) (invalidating a drug tax that was more than eight times the drug's market value based in part upon the high tax rate). Considering all of these factors, we therefore hold that the Wisconsin drug tax is fairly characterized as a criminal punishment for the purpose of double jeopardy analysis.

In reaching this decision, we acknowledge that a few of the *Kennedy* factors are not present in this case. Specifically, monetary fines do not involve an affirmative disability or restraint and have not historically been viewed as punishment. *See Hudson*, 522 U.S. at 104. Moreover, the statute imposes strict liability upon the acquisition or possession of controlled substances and therefore does not require a finding of *scienter*. *See* Wis. Stat. § 139.88. However, the absence of these elements is not dispositive, as all of the factors are "relevant to the inquiry, and may often point in differing directions." *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963).

We find support for our conclusion in the closely analogous case of *Department of Revenue of Montana v. Kurth*

*Ranch*, 511 U.S. 767 (1994). In *Kurth Ranch*, the Supreme Court held that Montana's tax on the possession of illegal drugs was a punishment for the purposes of double jeopardy analysis. *See id.* at 784. Acknowledging that "the unlawfulness of an activity does not prevent its taxation," the Court still found that where a tax has punitive characteristics, it will be subject to the constraints of the Double Jeopardy Clause. *See id.* at 778-79.

In *Kurth Ranch*, the Supreme Court found that the Montana drug tax was a punitive tax, and therefore subject to double jeopardy analysis, due to a combination of several factors. One of these factors was that the tax assessment was more than eight times the market value of the drugs taxed, which the Court characterized as "a remarkably high tax." *Id.* at 780. The Court also considered the fact that the tax was conditioned on the commission of a crime to be "significant of penal and prohibitory intent rather than the gathering of revenue." *Id.* at 781. Another "exceptional" feature of this tax was that the drugs had already been confiscated and presumably destroyed by the time the tax was imposed. *Id.* at 783. According to the Court, a "tax on 'possession' of goods that no longer exist and that the taxpayer never lawfully possessed has an unmistakable punitive character." *Id.*

Notably, all of these "exceptional" features are also present in the Wisconsin drug tax. Just like the Montana drug tax, the Wisconsin tax imposes a high tax rate, is conditioned on the commission of a crime, and was applied to the Appellant after the drugs were confiscated and presumably destroyed by the state.

The Appellee does not quarrel with the closely analogous nature of *Kurth Ranch*, but rather argues that *Kurth Ranch* is no longer good law. It is argued that *Kurth Ranch* was derived from *United States v. Halper*, 490 U.S. 435 (1989), which was then overruled by *Hudson v. United States*, 522

U.S. 93 (1997). *See United States v. Warneke*, 199 F.3d 906, 908 (7th Cir. 1999) (stating in dicta that the "analytical approach employed in *Kurth Ranch* . . . was jettisoned in *Hudson*" but ultimately holding that *Kurth Ranch* did not apply to the case at issue).

While *Kurth Ranch* discussed *Halper*, the analysis used in *Kurth Ranch* did not mirror the analysis used in *Halper*. *See Kurth Ranch*, 511 U.S. at 776 ("In *Halper* we considered 'whether and under what circumstances a civil penalty may constitute 'punishment' for the purposes of double jeopardy analysis.' Our answer to that question does not decide the different question whether Montana's tax should be characterized as punishment.") (citation omitted); *see also id.* at 784 ("tax statutes serve a purpose quite different from civil penalties, and *Halper*'s method of determining whether the exaction was remedial or punitive 'simply does not work in the case of a tax statute.' Subjecting Montana's drug tax to *Halper*'s test for civil penalties is therefore inappropriate") (citations omitted). Specifically, *Kurth Ranch* did not focus solely on whether the sanction was grossly disproportionate to the harm caused, nor did it assess the "character of the actual sanctions imposed" rather than evaluating the "statute on its face"—the two aspects of *Halper*'s analysis that the Supreme Court found to be in error in *Hudson*. *See Hudson*, 522 U.S. at 101.

Rather, *Kurth Ranch* used a test much more akin to that set forth in *Hudson*.[2] First, the Court stated that a

---

[2] As was already discussed, *Hudson* set forth a two-part test under which courts first analyze whether the legislature intended to create a civil or criminal sanction, and second determine whether a statute designated as civil is so punitive in either form or effect that it should be characterized as criminal despite the legisla-
(continued...)

tax will only be viewed as a criminal punishment when "the penalizing features of the so-called tax" cause it to lose "its character as such and become[ ] a mere penalty with the characteristics of regulation and punishment." *Kurth Ranch*, 511 U.S.at 779. Next, the Court went on to analyze a variety of factors to determine whether the tax should be considered a form of punishment. These include: whether the tax is "motivated by revenue-raising, rather than punitive, purposes"; whether it is "a remarkably high tax"; whether the tax serves "an obvious deterrent purpose"; whether the "tax is conditioned on the commission of a crime"; whether the tax is "exacted only after the taxpayer has been arrested for the precise conduct that gives rise to the tax obligation"; and whether the tax is "levied on goods that the taxpayer neither owns nor possesses when the tax is imposed". *See id.* at 779-83. Significantly, at least four of these factors exactly mirror four of the *Kennedy* factors used in *Hudson*.

The similarity of the tests was acknowledged in *Hudson* itself, when the Court stated in a footnote that *Kurth Ranch* "applied a *Kennedy*-like test before concluding that Montana's dangerous drug tax was 'the functional equivalent of a successive criminal prosecution.'" *Hudson*, 522 U.S. at 102, n.6 (citations omitted). Moreover, Justice Stevens' concurrence emphasized that the Court's decision in *Hudson* reaffirmed the central holding of *Kurth Ranch*. *Id.* at 110. In another concurrence, Justice Breyer, joined by Justice Ginsburg, commented that *Kurth Ranch* properly "track[ed] the non-exclusive list of factors set forth in *Kennedy*, and it is, I believe, the proper approach." *Id.* at 115. Thus, notwithstanding any previous dicta by this

---

[2] (...continued)
ture's contrary intent. *See Hudson v. United States*, 522 U.S. 93, 103-04 (1997).

Court, *Hudson* should not be read as disavowing the analysis or holding of *Kurth Ranch*.

We conclude that *Kurth Ranch* is still good law. We further conclude that under both *Kurth Ranch* and *Hudson*, the Wisconsin drug tax is properly characterized as a criminal punishment for the purposes of double jeopardy analysis. Therefore, we must proceed to discuss whether jeopardy attached to this tax assessment and seizure. After all, it is a fundamental principle of double jeopardy law "that an accused must suffer jeopardy before he can suffer double jeopardy." *Serfass v. United States*, 420 U.S. 377, 393 (1975).

Before we begin this analysis, however, we pause to note that both parties agree that the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) do not apply to this case because the Wisconsin Court of Appeals found that the double jeopardy issue was moot and thus did not analyze the claim on its merits. *Cf. Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998) (holding that AEDPA only applies where the state court adjudicated the constitutional issue on the merits). Under pre-AEDPA standards, we presume that questions of fact decided by the state court are correct, *see Rodriguez v. Peters*, 63 F.3d 546, 554 (7th Cir. 1995), while questions of law or mixed questions of law and fact are reviewed *de novo. See Shasteen v. Saver*, 252 F.3d 929, 933 (7th Cir. 2001).

As this Court has previously discussed, the Supreme Court has not decided the issue of when jeopardy attaches to a taxing procedure. *See United States v. Warneke*, 199 F.3d 906, 908 (7th Cir. 1999) ("if the tax had been levied prior to the drug prosecution, the Supreme Court would then have had to determine whether the taxing procedure resulted in the attachment of jeopardy"). In *Kurth Ranch*, the criminal prosecution was followed by a tax assessment, and the Supreme Court concluded that "[t]he proceeding

Montana initiated to collect a tax on the possession of drugs was the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time." 511 U.S. at 784. It is unclear, however, what proceeding the Supreme Court was referring to. This Court has hypothesized that, for the purposes of a civil forfeiture, jeopardy does not attach until there is a contested hearing "when evidence is first presented to the trier of fact." *See United States v. Torres*, 28 F.3d 1463, 1465 (7th Cir. 1994). In the instant case, such an approach would result in a conclusion that jeopardy did not attach, because the Department of Revenue cancelled the assessment and returned Dye's money before a hearing took place. However, it is arguable that the requirement of a contested hearing should not apply when one is seeking relief from multiple punishments rather than multiple prosecutions. Using this logic, we might adopt a rule similar to the Fifth Circuit's, which holds that jeopardy attaches to a punitive tax "when the defendant voluntarily pays the amount due in full . . . [or] when the government takes title to a defendant's assets." *See Doyle v. Johnson*, 235 F.3d 956, 959 (5th Cir. 2000). Under this approach, we would conclude that jeopardy attached in this case as soon as Dye's bank account funds were seized.

We conclude that the purposes of the Double Jeopardy Clause are best served by the latter rule. This case is analogous to those where a defendant is sentenced to both a fine and imprisonment when the statute allows only a fine or imprisonment. In such cases, if the fine has been paid, the defendant has "fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence" and therefore the court's "power to punish for that offence was at an end." *See Ex Parte Lange*, 85 U.S. 163, 176 (1873); *see also In re Bradley*, 318 U.S. 50, 52 (1943) (holding that when a fine is paid, there is "a full satisfaction of one of the alternative penalties of the law"

and that the fine cannot be reimbursed in order to punish the defendant instead with imprisonment). Similarly, when the state of Wisconsin seized Dye's assets, he endured one of the alternative punishments allowed under the Wisconsin Statutes. Wisconsin cannot undo the punishment by returning the money, nor can it seek to impose another punishment once the money has been paid.[3]

We note that this case is distinguishable from those where a civil forfeiture proceeding takes place without opposition and the defendant never becomes a party to the proceeding. *See United States v. Torres*, 28 F.3d 1463, 1465-66 (7th Cir. 1994). Here, Dye was a named party on the subpoena seeking to freeze his assets and Dye filed a written objection to the seizure of his assets and the tax assessment. There is therefore no question that the money belonged to Dye and that his punishment was complete once the state of Wisconsin took title to his assets.

For these reasons, we reverse the district court's denial of habeas corpus. In doing so, we emphasize that this case does not stand for the proposition that Wisconsin cannot both tax and imprison those who violate drug laws. It is well-established that cumulative punishments may be meted out as long as they result from a single proceeding. *See, e.g.*, *Kurth Ranch*, 511 U.S. at 778; *Torres*, 28 F.3d at 1464. Moreover, it is a rare tax statute which is so punitive in either purpose or effect that it is subject to double jeopardy analysis at all. However, when we are presented with

---

[3] For this reason, the Appellee's mootness arguments are without merit. The Appellee cites no case law, and we can find none, that supports the proposition that jeopardy can "unattach" once it has attached. Dye's claim is therefore not rendered moot by the return of his money because jeopardy attached at the moment it was seized.

a criminal punishment masquerading as a civil tax, we are compelled by the mandates of the Constitution to ensure that the defendant is punished only once for his misconduct.

### III. CONCLUSION

For the foregoing reasons, the district court's denial of Dye's petition for habeas relief is REVERSED.

A true Copy:

      Teste:

               _____

               *Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—1-27-04