# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2364

FAIRLY W. EARLS,

*Petitioner-Appellant,*

v.

GARY R. MCCAUGHTRY, WARDEN,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 46—**J.P. Stadtmueller**, *Judge.*

———————

ARGUED MAY 21, 2004—DECIDED AUGUST 16, 2004

———————

Before BAUER, KANNE, and DIANE P. WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* This habeas corpus appeal arises from Fairly W. Earls' 1999 convictions for first-degree sexual assault of a child pursuant to Wisconsin Statute § 948.02. Earls appeals, claiming he was denied effective assistance of counsel in violation of his Sixth Amendment rights. We agree and remand this case to the District Court to issue Earls' writ, unless the State elects to retry him within 120 days.

## Background

The facts of this case arise out of a camping trip that took place over Labor Day weekend in 1997. Among those on the trip were Earls, his wife, and the family of J.M.O., the six-year-old child Earls was accused of having assaulted. There were also other friends present at various times—about 15-20 people all together. Over the course of the weekend, the State claimed there were four incidents in which Earls touched J.M.O. inappropriately. We will briefly summarize the incidents.

On August 30 the families had a party at the campsite to celebrate Earls' birthday. J.M.O. testified that Earls touched her vaginal area over her clothing while she sat on Earls' lap during the birthday party. There were several people sitting near Earls, but no one witnessed the touching; Earls carried on conversations with other people while J.M.O. was on his lap. J.M.O. stated that the second incident[1] also occurred during the party when she and Earls went to Earls' shed together; again, J.M.O. testified that Earls rubbed her vaginal area over her clothing. No one witnessed the incident, and no one saw the two go to the shed together. The last incident occurred the following evening after the group returned to the campground after spending the day in nearby Dundee, Wisconsin. About nine people were sitting in a gazebo at the campsite in a well-lit area, J.M.O. was sitting on Earls' lap. No one who was present witnessed any improper touching.

Nine days after the camping trip, J.M.O. told her mother that Earls had touched her inappropriately over Labor Day weekend. J.M.O.'s mother waited several days before con-

---

[1] Earls was charged with four counts of assault but convicted of only three. The difference between the charges and the convictions may be explained by the fact that, in her testimony, J.M.O. considered inappropriate touching on the way to the shed and at the shed as a single incident whereas the State counted these as two separate incidents.

tacting authorities. On September 23, 1997, J.M.O. was interviewed by a social worker at the Child Protection Center at Children's Hospital in Milwaukee, Wisconsin. That interview was videotaped. J.M.O. asserted that Earls touched her inappropriately three times. The subsequent medical exam found no evidence of sexual abuse.

At his trial, Earls' defense was that he never touched J.M.O. in an inappropriate manner and that she was mistaken or confused as to the events of Labor Day weekend. J.M.O. testified at trial to three incidents of touching. Elizabeth Ghilardi, the social worker who had initially interviewed J.M.O., also testified at trial; in part of her testimony she stated that she believed J.M.O. was telling the truth. Additionally, J.M.O's mother and father testified, as well as J.M.O's aunt and uncle. All testified to J.M.O.'s truthfulness regarding the accusation. Earls' counsel never objected. No witnesses testified to corroborate J.M.O.'s story regarding the events of Labor Day weekend; all witnesses stated that they did not see any inappropriate behavior. In addition to the witnesses, the jury also viewed the videotaped interview between Ghilardi and J.M.O.; at the conclusion of the interview Ghilardi tells J.M.O.: "I'm very sorry that Fairly did that to you. He should not have been touching you down there . . . [t]hat was not okay . . . ." and "we don't want him to do this to you anymore." Earls' counsel was instructed to redact that portion of the tape prior to showing it to the jury; he failed to do so. The jury took a transcript of the video with them into their deliberations. Earls did not testify at trial. The government's closing argument was largely based on J.M.O.'s truthfulness.

Earls was found guilty of three counts of first-degree sexual assault of a child and sentenced to 45 years' imprisonment and 20 years' probation. Earls now files this habeas appeal claiming he received ineffective assistance of counsel; specifically, that counsel failed to object to the live testimony regarding J.M.O.'s truthfulness, and that counsel failed to redact the portions of the videotape that contained

Ghilardi's judgment concerning the events of Labor Day weekend. Earls also argues that the admission of such improper testimony prevented him from receiving due process. We address these claims below.

### Discussion

We review the majority of this habeas corpus appeal under the standards set out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA applies where the state court has made an application of Federal law. In those cases, a writ may not be granted unless the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. 28 U.S.C. § 2254(d)(1). Earls argues that the State court made an unreasonable application of Federal law. An "unreasonable application" occurs if the state court correctly identifies the governing legal rule but unreasonably applies it to the facts in the petitioner's case. *Anderson v. Cowan*, 227 F.3d 893, 896 (7th Cir. 2000). While there is no exact definition of "unreasonable," we have noted that in reaching such a conclusion, we must find something more than that the state court made an *incorrect* application of the law. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

For one portion of the analysis below, we apply the pre-AEDPA standard of review because the State court did not adjudicate an aspect of a Federal claim on its merits. *Walton v. Briley*, 361 F.3d 431, 432 (7th Cir. 2004). That portion of the opinion deals with the prong of the *Strickland* test that considers whether an attorney's performance was deficient. Under the pre-AEDPA standards we review questions of law and mixed questions of law and fact de novo. *Dye v. Frank*, 355 F.3d 1102, 1107 (7th Cir. 2004).

*I.  Ineffective Assistance of Counsel Claims*

Earls contends that his Sixth Amendment right to effective assistance of counsel was violated. We review these claims under the framework established in *Strickland v. Washington*, 466 U.S. 668 (1984). In so doing, we use a two-pronged analysis, asking whether counsel's performance was deficient and whether that error resulted in prejudice to the defendant's case such that there is a reasonable probability that, absent the error, the outcome of the case would have been different. *Id.* at 687, 694.

*A.  Deficient Performance*

Earls alleges two errors on the part of his trial counsel involving failure to object to the testimony of an expert witness. Earls also alleges error by his attorney for failure to object to lay testimony. We will briefly discuss each omission on the part of Earls' attorney and the applicable Wisconsin law.

*1.  Expert Testimony*

The admission of expert testimony is governed by Wisconsin Statute § 907.02, which states: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Wisconsin case law directs that an expert witness may not give testimony regarding the truthfulness of another witness. *State v. Haseltine*, 352 N.W.2d 673, 676 (Wis. Ct. App. 1984). The facts in *Haseltine* illustrate the problem with such testimony. In that case, the defendant was accused of having sexual contact with his sixteen-year-old daughter. A psychiatrist testified that in his opinion, there "was no doubt whatsoever" that the

accuser was a victim of incest. *Id.* at 675-76. In reversing the lower court, the Wisconsin Court of Appeals stated that it was a violation of Wisconsin Statute § 907.02 to have an expert witness opine as to the truthfulness of the victim's testimony. *Id.* at 676; *see also State v. Romero*, 432 N.W.2d 899, 904-05 (Wis. 1988) (police officer and social worker may not offer opinions as to whether seven-year-old was telling the truth when she said her step-father sexually assaulted her). *But see State v. Jackson*, 523 N.W.2d 126, 129 (Wis. Ct. App. 1994) (finding permissible questions to defendant regarding the veracity of witnesses testifying against him when the purpose of the inquiries is to impeach defendant).

Wisconsin has noted that it is a duty left solely to the jury to assess the credibility of witnesses. Such testimony is harmful at trial because it impermissibly interferes with the jury's role. *Romero*, 432 N.W.2d at 904-05 ("The testimony in this case was not helpful to the jury. Rather, it tended to usurp the jury's role. The credibility of a witness is left to the jury's judgment.").

Earls believes his attorney committed two errors regarding this provision of the law. The first was in failing to object to portions of Ghilardi's expert testimony when she commented on J.M.O.'s truthfulness. Ghilardi is a social worker who specializes in working with children who are victims of physical or sexual abuse. The text of the relevant testimony is as follows:

> Q: In this interview with [J.M.O.] throughout the course were you looking for those things which you already described to see if it appears if the person is being truthful with you?
>
> A: Yes.
>
> Q: And did you notice anything like that?
>
> A: Again, she resisted suggestibility. And she appeared to be able to let me know when she didn't know the answer to something as we were talking.

Q: Was there anything that you look for that you saw in [J.M.O.] that would indicate that she was not being truthful?

A: Nothing that I noted at the time, no.

. . . .

Q: Or anything to indicate that she was just trying to say what you wanted to hear?

A: No.

Q: Or anything to indicate to you that she was just telling you what somebody else had told her to tell you?

A: No.

Tr. Vol. 112 at 196-97.

When asked at the post-conviction hearing why he did not object, Earls' counsel acknowledged that Ghilardi's testimony violated *Haseltine*, and said that his failure to object was "an oversight" and that the impermissible testimony "slipped by" him. Tr. Vol. 118 at 11.

The second error occurred when Earls' attorney failed to redact portions of the videotaped interview between Ghilardi and J.M.O. in which Ghilardi ends the interview with her assessment that she's "sorry that Fairly did that to you," "[h]e should not have been touching you down there," and "we don't want him to do this to you any more." Tr. Vol. 118 at 16-17. In the pre-trial hearing, both sides' attorneys and the trial court judge agreed that the statement should be redacted from the tape; the judge instructed Earls' counsel to make the redactions before the tape was shown to the jury. Earl's attorney failed to do this and did not object when the jury requested a transcript of the tape to bring into the jury room. When asked to explain, the attorney stated that he had "forgotten" to redact the tape and characterized this failure to act as an "oversight."

With regard to the above-listed attorney errors, the Wisconsin Court of Appeals did not make a finding as to whether counsel's failure to object to Ghilardi's testimony and failure to redact the videotape constituted deficient performance, it moved instead directly to the issue of prejudice. We now consider whether Earls' counsel's conduct constituted deficient performance.

We recognize that review of counsel's performance under *Strickland* must be "highly deferential"; the propriety of all actions should be viewed at the time of counsel's conduct rather than with the benefit of hindsight; we also recognize that there is a wide latitude for behavior stemming from trial strategies. *Strickland*, 466 U.S. at 689-90. In reviewing trial counsel's actions in the above situations, we find that the repeated failure to object to the testimony in question clearly fell below an objective standard of reasonableness.

The nature of the case highlights the central role that J.M.O.'s credibility played in Earls' conviction. There were no witnesses who could corroborate J.M.O.'s story, there was no physical evidence of the assaults, and no witnesses testified to any impropriety involving Earls. Whether Earls was found guilty hinged on whether the jury believed J.M.O. We can think of no strategic reason why Earls' counsel would not have objected to the pieces of questionable testimony going to this issue; indeed, counsel admits such failures to object and redact were unintentional "oversights." Similarly, we can think of no reason that the importance of that testimony would not have been apparent at the time of the trial. The areas of Wisconsin evidentiary law in play here are sufficiently clear; indeed the cases in which these evidentiary questions are examined are almost factually identical to Earls' case. *See Haseltine*, 352 N.W.2d at 674-76 (involving psychiatrist testimony going to veracity of 16-year-old accuser where there was no other evidence of incest); *Romero*, 432 N.W.2d at 900-05 (involving testimony of seven-year-old's mother, school guidance counselor and

a police officer going to her veracity when there was no other evidence of sexual assault).

### 2. Lay Testimony

Earls also objects to testimony given by J.M.O.'s mother, father, aunt, and uncle. The questioning of each of these witnesses followed a similar pattern in which the prosecutor would ask the witness whether, from their experience, they believed J.M.O. to be truthful, and whether he or she thought there was any reason J.M.O. would have made up her story regarding the weekend. Each witness testified that they believed J.M.O. was truthful and did not make up her story about Earls.[2] Earls' counsel did not object to this testimony.

Wisconsin Statute § 906.08(1) allows the introduction of reputation evidence after a witness's character for truthfulness has been attacked, but cautions that, "[t]he [reputation] evidence may refer only to character for truthfulness or untruthfulness." The case, *State v. Romero*, makes clear that

---

[2] For example, J.M.O.'s aunt's testimony was as follows:

Q: Do you know any reason that [J.M.O.] would be making up stories or making up this sort of allegation against Mr. Earls?

A: No.

Q: And I guess as [J.M.O.'s] aunt you've know her since she was little, obviously?

. . . .

A: Yes.

Q: And do you think you know her well enough to be able to tell us whether you have an opinion as to whether she is generally a truthful child?

A: I believe she is.

Tr. Vol. 113 at 153-54.

there is a line between admissible testimony that goes to a witness's general reputation for truthfulness and inadmissible testimony that goes to whether a witness is being truthful *in a specific instance*. In *Romero* the Wisconsin Supreme Court found that certain testimony from a police officer and a social worker regarding their interviews with a seven-year-old who accused her stepfather of molesting her was inadmissible. The Court noted, "[t]he statements were not simply opinions as to [the child's] character for truthfulness under sec. 906.08(1), Stats. Rather, they were impermissible opinions that [the child's] accusations were true." *Romero*, 432 N.W.2d at 904.

We believe this is the correct framework in which to evaluate the testimony of J.M.O.'s family members. On appeal, the Wisconsin Court of Appeals held that the testimony was admissible under Wisconsin Statute § 906.08(1), reasoning that because J.M.O.'s character for truthfulness had been attacked, the testimony was admissible. We view askance this holding by the State court. However, because it is not our place to second-guess state courts in interpreting state law we must find that the State court did not make an unreasonable application of *Strickland* when it found counsel's failure to object to testimony given by J.M.O.'s mother, father, aunt and uncle did not constitute deficient performance.

### B. Prejudice

Having found that Earls' representation fell below an objective standard of reasonableness with regard to the social worker's testimony and videotape, we turn to the issue of whether that deficient performance prejudiced Earls' trial. As noted above, prejudice occurs when we can determine that there is a reasonable probability that, but for the errors, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694. The Wisconsin Court of

Appeals found that the attorney's errors did not prejudice the trial; we find this determination to be unreasonable.

As discussed above, the sole issue before the jury was whether J.M.O. was telling the truth. There was no physical evidence of abuse and no witnesses who could corroborate J.M.O.'s version of the events of Labor Day weekend. The lack of witnesses is especially disturbing given the fact that two of the incidents were said to have occurred when there were numerous others present. For the most part, the witnesses that the government called were family members of J.M.O., who could not verify her story—the only support they could lend was asserting that, in their experience, they had not known J.M.O. to lie. Ghilardi was the only non-biased witness who appeared before the jury; she appeared as an expert who specialized in working with children who were likely victims of sexual abuse.

We have previously held that when a trial comes down to a single issue such as the credibility of a witness, deficient performance by defense counsel regarding that credibility issue may cause prejudice. *Montgomery v. Petersen*, 846 F.2d 407, 412-13 (7th Cir. 1988) (finding that counsel's failure to introduce a witness to corroborate defendant's alibi was prejudicial where government based its case on the testimony of defendant's purported accomplice). Similarly, we have noted that where, like here, the defense attorney made multiple errors as opposed to a single error, the cumulative effect of those errors should be considered together to determine the possibility of prejudice. *Washington v. Smith*, 219 F.3d 620, 634-35 (7th Cir. 2000). In this case, Ghilardi's testimony was pivotal—indeed, the jury asked for a transcript of her videotaped interview to consider while they deliberated. Unfortunately, that testimony twice wandered into assessing the credibility of J.M.O.'s accusation—an issue that should have been left solely for the jury to determine. Given the facts and circumstances of this trial, we find that the State court was unreasonable in finding that there was

not a reasonable probability that, absent counsel's errors, the outcome of the trial would have been different.

### C.  Procedural Default

We briefly address an issue of procedural default raised by the government regarding Earls' counsel's failure to redact the videotape. The government argues that Earls failed to raise his claim in his brief for the State appellate court and that omission "deprived the Wisconsin Court of Appeals the opportunity to address this claim separately." Br. of Respondent-Appellee at 26; *see also Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001) (stating a petitioner must fairly present a claim so that the state court has a "meaningful opportunity" to address it). This argument is baseless. Earls brief before that court explicitly states, in its argument labeled "Earls' Counsel was Ineffective," that: "Mr. Earls was denied the effective assistance of counsel at trial guaranteed by the Sixth Amendment to the United States Constitution . . . by his counsel's failure to . . . redact the videotape to exclude Ghilardi's comments about Earls." Docket 10: Exhibit B at 28. The brief goes on to discuss and apply the *Strickland* test. *Id.* The Wisconsin Court of Appeals then addressed the claim in paragraphs 3-7 of its resulting opinion. We find Earls' claim was not procedurally defaulted.

### II.  Due Process Claim

Because we find for Earls on his first claim, we decline to address his Due Process claim.

### Conclusion

Accordingly, this case is REVERSED and REMANDED to the district court to grant Earls' writ of habeas corpus, unless the State elects to retry him within 120 days.

No. 03-2364 13

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*