COURT OF APPEALS
DECISION
DATED AND FILED

June 15, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP2319-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF381

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

JEROMY M. MATHEWS,

   DEFENDANT-APPELLANT.

        APPEAL from a judgment and an order of the circuit court for Eau Claire County: MICHAEL A. SCHUMACHER, Judge. *Affirmed*.

        Before Stark, P.J., Hruz and Seidl, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

        ¶1     PER CURIAM.   Jeromy Mathews appeals a judgment of conviction for repeated sexual assault of a child and an order denying his postconviction

motion. Mathews argues he is entitled to a new trial because the prosecutor engaged in misconduct, he received constitutionally ineffective assistance from his trial counsel, and the victim was incredible as a matter of law. We reject Mathews' arguments and affirm.

## BACKGROUND

¶2    Eric[1] confided to his fourth-grade classmate that Mathews, his father, had repeatedly sexually assaulted him years ago when he was five and six years old. The classmate reported the allegation to her mother, who then reported it to the school counselor. Ultimately, Eric was asked to attend a forensic interview with Pierce County social worker Michelle Harris, at which time he recounted that Mathews had oral and anal intercourse with him on several occasions when he was younger and visiting his father.[2]

¶3    In 2017, Mathews was charged with a single count of repeated sexual assault of a child, with the offense dates allegedly occurring between January 2010 and December 2012. At trial, Eric affirmed the claims he made during the forensic interview, and he also admitted that he had previously falsely accused his father of killing two of Eric's cousins. The defense called as a witness the school counselor, Jon Strand, to whom Eric had made the false homicide allegations. During closing arguments, Mathews' trial counsel highlighted the lack of physical evidence and argued that Eric was not credible. The jury returned

_____

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we use pseudonyms to refer to the victim and his family members. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Mathews and Eric's mother were separated, and Eric spent Saturdays overnight with Mathews during the charged time period between 2010 and 2012.

a guilty verdict, and Mathews was given a total sentence in excess of thirty years' imprisonment.

¶4      Prior to sentencing, Mathews' trial attorney filed a motion challenging the sufficiency of the evidence and seeking to change the verdict answer to not guilty.    That motion was denied after Mathews obtained postconviction counsel.[3]    Counsel then filed a postconviction motion raising four issues: (1) prosecutorial  misconduct;  (2) various  instances  of  ineffective assistance  of  counsel; (3) improper  witness  opinions  vouching  for  the  victim's credibility; and (4) the inherent incredibility of the victim's testimony.  The circuit court denied the motion following a ***Machner*** hearing.[4]  Mathews now appeals, renewing the same claims he made in his postconviction motion.

## DISCUSSION

*I. Prosecutorial Misconduct*

¶5      Eric's  mother,  Tanya,  testified  during  the  trial.    During cross-examination, Mathews' trial attorney asked her whether she noticed that Eric had trouble sitting down or had "problems with bowel movements" after returning from Mathews' care.   Tanya testified that over time, Eric's stools "became extremely large, like, they would start plugging toilets kind of thing," which ultimately caused them to seek medical care.  Mathews' attorney also asked if it

---

[3] Mathews does not appeal from the order denying his motion challenging the sufficiency of the evidence.  Nonetheless, no postconviction motion is necessary to raise such a challenge on appeal.  *See* WIS. STAT. § 974.02(2).  To the extent Mathews argues the evidence was insufficient to support his conviction, such an argument is effectively foreclosed by our conclusion that the victim's testimony was not incredible as a matter of law.

[4] *See **State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

3

was correct that she had not noticed blood spots in his underwear, pants or bed sheets when she was doing laundry. She testified, "That is correct—I mean, not anything that was excessive to where I was, like, oh, my gosh, this is blood stained or … anything like that."

¶6 During the defense's closing argument, Mathews' trial attorney repeatedly urged the jury to apply common sense to find Eric's sexual assault allegations incredible given the lack of accompanying physical injuries, among other reasons. In rebuttal, the prosecutor contended that there was physical evidence that consisted of "large stools" and "blood, a little bit." The prosecutor added that it was speculative for defense counsel to suggest "that there must be an injury in order for there to have been a sexual assault," adding:

> I will also say one final thing, again, using your common sense and whatever experience you have with penises and their size, when erect or not, what comes out is about the same size and certainly was that size by what [Tanya] was describing to you was coming out of her son when she did take him to a doctor.
>
> So if something can come out, something we do every single day, something can go in without injury. Please use your common sense.

Mathews contends this line of rebuttal argument constituted prosecutorial misconduct.

¶7 We review a circuit court's decision on a motion for a new trial based on prosecutorial misconduct for an erroneous exercise of discretion. *State v. Patterson*, 2010 WI 130, ¶56, 329 Wis. 2d 599, 790 N.W.2d 909. As the State notes, Mathews' counsel did not object to the prosecutor's rebuttal argument that Mathews now challenges. This omission typically operates as a forfeiture of the issue, and we are required to analyze it using the ineffective assistance of counsel

framework. *See* *State v. Davidson*, 2000 WI 91, ¶86, 236 Wis. 2d 537, 613 N.W.2d 606; *see also* *State v. Counihan*, 2020 WI 12, ¶28, 390 Wis. 2d 172, 938 N.W.2d 530.

¶8    In his reply brief, Mathews argues that the challenged rebuttal argument constitutes "plain error" for which no objection was necessary. Plain error is an error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time. *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. When a defendant alleges a prosecutor's statements constitute plain error, we must determine whether the statement so infected the trial with unfairness that the resulting conviction constitutes a denial of due process. *Davidson*, 236 Wis. 2d 537, ¶88.

¶9    Having considered the prosecutor's statements at issue, we conclude they do not rise to the level of plain error. We use the plain error doctrine sparingly. *Jorgensen*, 310 Wis. 2d 138, ¶21. Here, for reasons we explain more fully below, we conclude the prosecutor's statements were not so impermissible as to taint the trial with unfairness. The gist of the prosecutor's statements was to urge the jurors to use their common sense in evaluating the evidence, just as defense counsel had suggested during his closing argument. Accordingly, any assertion that the prosecutor overstepped the permissible boundaries of argument was forfeited and must be addressed under the ineffective assistance of counsel framework.

## II. Ineffective Assistance of Counsel

¶10    To demonstrate constitutionally ineffective assistance, a defendant must show both that counsel's performance was deficient and that it prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate

deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness by demonstrating that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment. *State v. Savage*, 2020 WI 93, ¶28, 395 Wis. 2d 1, 951 N.W.2d 838. We afford great deference to trial counsel's conduct and presume that it fell within the wide range of reasonable professional assistance. *Id.*

¶11 To demonstrate prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial. *Id.*, ¶32. There must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine our confidence in the outcome. *See id.*

¶12 We review ineffective assistance claims using a mixed standard of review. *Savage*, 395 Wis. 2d 1, ¶25. We will not overturn the circuit court's findings regarding the factual circumstances of the case and trial counsel's conduct and strategy unless those findings are clearly erroneous. *Id.* We determine de novo, however, whether trial counsel provided constitutionally deficient performance and, if so, whether that performance prejudiced the defendant. *Id.* If the defendant fails to satisfy either prong, we need not consider the other. *Id.*

A. *Prosecutor's Rebuttal Closing Argument*

¶13 Reviewing the prosecutorial misconduct issue under the ineffective assistance of counsel framework, we conclude Mathews has failed to demonstrate either deficient performance or prejudice arising from his trial attorney's failure to object to the prosecutor's closing argument or to move for a mistrial. During the

postconviction proceedings, Mathews' trial counsel testified he did not object to the prosecutor's statements because he viewed them as permissible argument and "didn't see it as being as what the case hinged upon."

¶14    Considering the challenged argument in context, we do not share Mathews' concern that it was improper commentary upon matters not in evidence. Rather, the argument was based upon inferences that could be drawn from Tanya's testimony, was consistent with the jury's instruction to use common sense when evaluating the evidence, and was responsive to defense counsel's emphasis on "common sense" during his closing argument. Moreover, we will not second-guess trial counsel's affirmative decision to forgo an objection because the challenged statements were not likely to influence the jury's deliberations. *See State v. Breitzman*, 2017 WI 100, ¶65, 378 Wis. 2d 431, 904 N.W.2d 93. The jury was also instructed that the arguments of the attorneys are not evidence, and we presume the jury obeyed that instruction. *See State v. LaCount*, 2008 WI 59, ¶23, 310 Wis. 2d 85, 750 N.W.2d 780.

¶15    Mathews raises a related allegation of ineffective assistance of counsel pertaining to his trial counsel's cross-examination of Tanya. Essentially, Mathews argues that when his trial attorney questioned Tanya about Eric's stools, he inadvertently wound up discrediting his assertion that there was no physical evidence that would support a finding that the sexual assaults occurred. Mathews argues that his trial counsel therefore committed constitutional error by "help[ing] the State prove its case."

¶16    We conclude that Mathews' trial counsel's conduct in this regard was neither deficient nor prejudicial. During the postconviction hearing, counsel testified it was an "off-the-cuff" question that backfired. The trial transcript

supports counsel's testimony that he "was looking at more whether there was incontinence, injury, contusions, complaint of pain issues." Although the line of questioning led to the inadvertent testimony regarding stool size, it was a reasonable trial strategy for defense counsel to attempt to elicit testimony that supported the theory that Eric lied about the assaults. Moreover, counsel successfully elicited Tanya's testimony that the medical examination revealed no obvious injuries, no infections, and no fissures or scarring. Regarding prejudice, it is not reasonably probable that, absent Tanya's testimony about large stools, the jury would have disbelieved Eric's testimony and rejected his sexual assault allegations.

### B. Investigation and Witness Preparation

¶17 Mathews raises a bevy of issues, with the main theme being that his trial attorney failed to conduct adequate pretrial investigation and engaged in unreasonable trial strategy by calling only one witness during the defense's case. Within this theme, Mathews specifically argues his trial counsel should have: (1) called as witnesses the family members involved in Eric's false homicide claims to diminish Eric's credibility; (2) contacted Mathews' former roommates and neighbors, who would have purportedly testified that they never saw the assaults or witnessed Eric alone outside for long periods of time after he fled the house; (3) presented evidence that Eric and his brother had reenacted a sex scene in April 2011 from a film they had watched; and (4) presented more than a single witness as part of the defense case, which consisted solely of the school counselor to whom Eric had made the false homicide allegations.

¶18 We conclude that none of these allegations establish that trial counsel was deficient, nor has Mathews shown that he was prejudiced by any

8

alleged deficiency. Eric admitted at trial that he had previously fabricated murder allegations against his father, a point that the defense highlighted repeatedly. Additional testimony from family members that those homicides had not occurred would therefore have been redundant. Whatever "bolstering" effect the testimony might have had was marginal at best, given that Eric conceded at trial that the homicide allegations were false. It was neither deficient performance nor prejudicial for trial counsel to decide not to call those individuals to testify at trial.

¶19 Mathews' trial counsel also did not perform deficiently by failing to further investigate or call as witnesses Mathews' former roommates or neighbors. Mathews' trial counsel decided that it would not have substantially contributed to the defense case to call former roommates to "say what they saw or did not see," because the State could easily rebut that testimony by eliciting, during cross-examination, that the person had not been present with Mathews to observe his conduct at all times. Similarly, trial counsel stated that, because of the time lapse involved, he elected not to attempt to contact neighbors who had lived near the locations of the alleged assaults nearly ten years prior.

¶20 Moreover, Mathews has not suggested that any individual he claims his trial counsel was supposed to interview could testify to anything more than that the individual had not witnessed anything out of the ordinary.[5] As trial counsel noted in his postconviction testimony, the State could easily rebut any such

---

[5] It appears to be merely Mathews' supposition that his former roommates and neighbors could testify even in that manner. Mathews did not attach any affidavits to his postconviction motion, nor did anyone other than Mathews and his trial counsel provide testimony at the *Machner* hearing. *See State v. Arredondo*, 2004 WI App 7, ¶40, 269 Wis. 2d 369, 674 N.W.2d 647 ("When a defendant claims that trial counsel was deficient for failing to present testimony, the defendant must allege with specificity what the particular witness would have said if called to testify.").

testimony by pointing out that the witness was not present with Mathews at all times or by making the argument that "just because you didn't see it doesn't mean … it didn't happen." Testimony of the nature Mathews desires from former roommates and neighbors was not reasonably probable to alter the jury's assessment of Eric's credibility.

¶21 Mathews also faults his trial counsel for failing to present evidence at trial that Eric and his brother had reenacted, in April 2011, a sex scene they saw in a film. On appeal, Mathews argues it was deficient performance not to argue that Eric's brother was "a possible alternative source of [sexual] knowledge." However, Mathews' trial counsel testified at the ***Machner*** hearing that he chose not to introduce that evidence because he was aware that Tanya claimed Eric was reenacting a scene from a pornographic film he had watched while at Mathews' residence. Counsel testified he "certainly didn't want to open up the door to that sort of testimony." We conclude Mathews has failed to establish either deficient performance or prejudice arising from trial counsel's refusal to present Eric's brother's testimony.[6]

¶22 Finally, we reject Mathews' assertion that his trial attorney performed deficiently in preparing his defense. Mathews argues the defense strategy of attacking Eric's credibility by showing he had previously made false allegations against his father was irrational and capricious because "[e]vidence that a witness has lied once in the past is not proof that the witness is lying again."

---

[6] Additionally, we note Eric admitted at trial that he had researched sexual topics on the internet, including rape. Thus, trial counsel successfully introduced alternative evidence that would have allowed the jury to draw the inference that Mathews desires—i.e., that Eric had an alternative source of knowledge. Trial counsel emphasized this point during his closing argument.

To the contrary, highlighting what trial counsel referred to as Eric's prior "outrageous lie" against his father was a reasonable strategic approach. Moreover, trial counsel cross-examined Eric about various inconsistencies and implausibilities in his versions of how the assaults occurred, and he emphasized the lack of physical evidence or injuries supporting that an assault had occurred. To the extent Mathews claims his trial counsel failed to adequately investigate or prepare Strand to testify, the record belies this claim.[7]

¶23     Although Mathews broadly criticizes his trial attorney's strategy, we perceive it to be well within the bounds of constitutionally competent assistance. As Mathews' trial counsel testified at the *Machner* hearing, the focus of the defense case was to highlight the lack of physical evidence and Eric's prior false allegations against his father. Counsel stated that, in his experience, it was not a good trial tactic to "throw everything at the wall and let the jury pick," but rather "it's better to give them one reasonable hypothesis consistent with innocence." This was a reasonable trial strategy. *See Breitzman*, 378 Wis. 2d 431, ¶65. Further, Mathews has presented no reason to believe that, even if his trial counsel had done everything he proposes, there was a reasonable probability that the result of the proceeding would have been different.

---

[7] Mathews suggests his trial counsel was deficient because he was not certain Strand would be permitted to testify until the State had presented its case. This suggestion ignores that his trial counsel's cross-examination successfully elicited Eric's denial of certain matters, thereby ensuring that Strand could testify.

Mathews briefly suggests that his trial attorney should have obtained "potentially-exculpatory employment records." Despite this assertion being undeveloped, we note that Mathews' trial counsel testified that Mathews had not supplied any information about his employment records, nor would such records have been probative given the lack of specificity about when the assaults occurred and the fact that Mathews undisputedly had weekly overnights with Eric.

### C. Impermissible "Vouching" Testimony

¶24    Next, Mathews claims that there were two violations of *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), to which his trial counsel failed to object.  Under *Haseltine*, "[n]o witness, expert or otherwise, should be permitted to give an opinion that another mentally and physically competent witness is telling the truth."  *Id.* at 96.  At trial, Tanya testified that Eric has "never been a big storyteller.  He's more of a child of truth, sometimes in that he gets himself into more trouble, but he's also been a truth teller."  After the defense called Strand to testify, the prosecutor asked him whether Eric was "also known as a truth teller," to which Strand responded, "Yes."

¶25    The State responds that Tanya's and Strand's testimony was admissible under WIS. STAT. § 906.08(1).  Under that statute, and as relevant here, a witness's credibility may be supported by reputation or opinion evidence establishing that the witness has a character for truthfulness.  Sec. 906.08(1)(a).  Such character evidence is admissible "only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise."  Sec. 906.08(1)(b).  "*Haseltine* places limits on the type of evidence that may be used to support a witness's character for truthfulness."  *State v. Tutlewski*, 231 Wis. 2d 379, 386, 605 N.W.2d 561 (Ct. App. 1999).

¶26    We conclude the challenged character evidence was admissible under WIS. STAT. § 906.08.[8]  From the very first moments of his opening statement, defense counsel placed Eric's credibility at issue, thereby opening the

---

[8] Because we conclude the challenged character evidence was admissible, it necessarily follows that it was not plain error to admit such evidence, contrary to Mathews' claims.

door for evidence regarding Eric's character for truthfulness. *See State v. Eugenio*, 219 Wis. 2d 391, 402, 579 N.W.2d 642 (1998). The assertions regarding Eric's credibility pertained not only to the allegations at hand, but also to other instances in which Eric was found to have lied, thereby constituting an attack upon Eric's general character for truthfulness. *See id.* at 404-05. The challenged testimony did not go so far as to violate *Haseltine* and was limited to Eric's general character for truthfulness.

¶27     Mathews has failed to demonstrate his trial attorney was ineffective under these circumstances. "It is well-established that trial counsel could not have been ineffective for failing to make meritless arguments." *State v. Allen*, 2017 WI 7, ¶46, 373 Wis. 2d 98, 890 N.W.2d 245. Mathews' assertion that this case is analogous to *Earls v. McCaughtry*, 379 F.3d 489 (7th Cir. 2004), is unavailing. *Earls* recognized that "there is a line between admissible testimony that goes to a witness's general reputation for truthfulness and inadmissible testimony that goes to whether a witness is being truthful *in a specific instance*." *Id.* at 495. Certain testimony in *Earls* was of the latter nature, *see id.* at 493, whereas the challenged testimony here falls entirely within the former category.

### D.  Eric's Cross-Examination

¶28     Mathews also argues his trial attorney's efforts to cross-examine Eric were insufficient. In particular, Mathews argues his trial counsel should have asked Eric about medications that "potentially" could have impaired Eric's cognition and memory. He also asserts his counsel should have pressed Eric further on the improbability of the sexual acts occurring when he and Mathews were physically positioned as he had described. Finally, Mathews argues his

attorney "failed to follow up with [Eric's] multiple contradictions at trial" and "failed to impeach several inconsistencies in [Eric's] testimony."

¶29 We agree with the State's explanation of why Mathews has failed to demonstrate ineffective assistance of counsel in any of these respects. Regarding the medications, Mathews' trial counsel testified that he would have so questioned Eric if he had noticed any indication of impairment at trial, but he saw no such signs. Mathews does not explain what information he believes would have been probative had it been elicited by his attorney, nor does he explain why any such information would have been reasonably probable to change the jury's assessment of Eric's credibility. In any event, the jury could reasonably infer that Eric was on some medication, as Eric testified during cross-examination, "[B]efore I was on pills, I used to, like, just break everything and sit and pout at the dog for hours."

¶30 Regarding Mathews' trial attorney's efforts to impeach Eric, our review of the record demonstrates that his performance was within permissible constitutional boundaries. During Eric's cross-examination, Mathews' trial counsel laid the foundation for Strand's testimony, in part by questioning Eric about his prior false accusations of homicide against his father and exactly what he had told Strand about those events. During closing argument, trial counsel noted that during cross-examination Eric had denied telling Strand some things, whereas Strand had affirmed that Eric had, in fact, made those statements to him.

¶31 Moreover, Mathews' trial counsel elicited testimony during cross-examination recounting details of the assaults that Eric had not mentioned during the forensic interview. This testimony allowed counsel to further impugn Eric's credibility during closing argument by asserting it was improbable that Eric's memory was now better, two years later. Trial counsel also noted that Eric

14

made claims at trial that "we've never heard before" and that Eric had "never mentioned [to Strand]. He says he was able to remember it today though."

¶32    Counsel also elicited extensive testimony on cross-examination regarding the precise physical positions Eric claimed that he and Mathews were in when the assaults occurred and how Eric was able to escape. During closing argument, counsel emphasized repeatedly the point that "[c]ommon sense tells you that the accusations we heard on that video are implausible in the way they were described." Counsel further argued that the details Eric added at trial to his statements from the forensic interview were, at best, improbable regarding how the assaults occurred. Counsel emphasized: "Every time we get a vague description how this occurred. Every time this five-year-old child is able to physically knock back his fully grown father by pushing, hitting him, kicking him, and every time he runs away, and that's the end of the story." Counsel's arguments questioned how Eric could have had time to dry off from the shower, clothe himself, and escape from the residence if his father was still chasing after him, as Eric had described. And counsel also repeatedly cast doubt that the assaults could have happened in the positions Eric described, arguing at various points that he did not know how Eric's description "would work" or "how the mechanics of that one are even possible here."

¶33    To the extent Mathews suggests his trial attorney should have done more, we reject the notion that the failure to do so rendered his trial counsel constitutionally deficient. At the *Machner* hearing, counsel testified that he did not attempt to impeach "every single inconsistency in the video" because he "didn't want to rehash the entire forensic interview. The jury heard it. They saw it. I thought it a better tactic to point out the big, major points and then talk about everything else in closing."

¶34    Although Mathews suggests this tactic was contrary to ***State v. Coleman***, 2015 WI App 38, 362 Wis. 2d 447, 865 N.W.2d 190, we disagree with the notion that that case is analogous.  The "minor detail" at issue there was a police report containing the father's statement that, the evening following an alleged sexual assault of his daughter, he witnessed the victim sitting with the defendant watching television.  ***Id.***, ¶¶36, 39.  This statement directly contradicted the victim's trial testimony that she went to bed early to avoid the defendant.  ***Id.***, ¶36.  Although this case, like ***Coleman***, primarily turned on the victim's credibility, none of the alleged failures of Mathews' trial counsel during cross-examination involve facts of nearly as much import.

¶35    In sum, we conclude the challenged conduct by Mathews' trial counsel was within the wide range of professionally competent assistance guaranteed by the Sixth Amendment.  Moreover, none of the alleged errors, either individually or in combination, undermine our confidence in the outcome of the trial.

*III.  Victim's Credibility*

¶36    Mathews asserts the victim's trial testimony was incredible as a matter of law, and therefore his conviction cannot stand.  "[O]nly when testimony is inherently or patently incredible will this court substitute its judgment for that of the fact finder."  ***State v. Jacobs***, 2012 WI App 104, ¶17, 344 Wis. 2d 142, 822 N.W.2d 885.  Evidence is inherently or patently incredible when it is "in conflict with nature or fully established or conceded facts."  ***Id.***, ¶20 (citation omitted).

¶37    Mathews argues this standard has been met because the physical positions in which Eric described the assaults occurring, as well as his explanations of how he was able to overpower Mathews, are "improbable if not

impossible" given Mathews' "size and lack of flexibility." Assessments of this nature are best left to the jury. *See **Nabbefeld v. State***, 83 Wis. 2d 515, 529, 266 N.W.2d 292 (1978). Suffice it to say, we do not perceive Eric's testimony to conflict with the laws of nature such that he should be deemed incredible as a matter of law.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.